Glen K. DORSEY, Jr. and Barbara J. Dorsey, his wife, Plaintiffs-Appellants Cross Appellees,

v.

HONDA MOTOR COMPANY LTD. et al., Defendants-Appellees Cross Appellants.

HONDA MOTOR COMPANY LTD., Defendant-Appellant Cross Appellee,

v.

CONTINENTAL CASUALTY COMPANY, Defendant-Appellee Cross Appellant.

No. 79–3845.

United States Court of Appeals,
Fifth Circuit.
Unit B

Sept. 11, 1981.

Frates, Floyd, Pearson, Stewart, Richman & Greer, Gary D. Fox, Larry S. Stewart, Miami, Fla., for plaintiffs-appellants-cross appellees.

Anthony M. Lanzone & Assoc., Anthony M. Lanzone, Robert A. Calinoff, New York City, for defendants-appellees-cross appellants.

DeWolf, Ward, Morris, Wohlust, Jontz & O'Donnell, John L. O'Donnell, Jr., Thomas B. DeWolf, Orlando, Fla., for Honda Motor Company Ltd.

Akerman, Senterfitt & Eidson, John Edwin Fisher, Orlando, Fla., for Continental Cas. Co.

Joe N. Unger, Miami, Fla., for Honda Motor Co. Ltd., American Honda Motor and Mission Ins.

Before GODBOLD, Chief Judge, and MORGAN and HENDERSON, Circuit Judges.

GODBOLD, Chief Judge:

Plaintiff, Glen K. Dorsey, Jr., suffered serious injuries when his 1971 Honda AN 600, a small automobile, collided with a full size Ford. In this Florida diversity case Dorsey and his wife Barbara sued the manufacturer, Honda Motor Company Ltd., (Honda), and the distributor, American Honda Motor Company, on several alternative grounds: negligent design,[1] negligent failure to warn of defects, strict product liability, and breach of implied warranty. Dorsey also joined as defendant Continental Casualty Company, Honda's liability insurer, as permitted under Florida law.[2] Continental acknowledges that if punitive damages are properly awarded against Honda and if such damages are covered by one of the liability insurers, it will be the insurer responsible.

The jury returned Rule 49 special verdicts in plaintiffs' favor on all theories of liability, and a special verdict finding that in the manufacture and distribution of the automobile Honda Motor Company acted "with wantonness, willfulness or reckless indifference to the rights of others." The jury awarded compensatory damages of $750,000 to Glen and $75,000 to Barbara and punitive damages to Glen of $5,000,000.[3] On motion for judgment n. o. v. the judge let stand the compensatory damages but set aside the punitive damages and entered a judgment under Rule 54(b) on the liability and damage issues.

The judge did not submit to the jury issues relating to coverage by Continental Casualty but, as permitted by Rule 49, entered non-jury findings and conclusions on these issues. Although the court had set aside the punitive damages awarded by the jury, for economy of judicial effort in case punitive damages were reinstated on appeal, the court held that Continental could not be liable under its policy for the punitive damage award, if reinstated. A second judgment was entered on these non-jury issues.

On appeal Dorsey asserts as error the judgment n. o. v. taking away punitive damages. By cross-appeal Honda contends that it was entitled to a directed verdict on liability issues, and that the district court erred in ruling that as a matter of law the insurance policy would not cover punitive damages.

We hold: (1) the court did not err in denying Honda's motion for directed verdict on liability; (2) the court erred in setting aside the punitive damages on motion for judgment n. o. v. and, therefore, we direct entry of judgment for Dorsey for the punitive damages awarded by the jury; (3) the holding that Continental is not liable for the punitive damage award is reversed and remanded for further consideration.

## I. THE FACTS

The following are the facts in the light most favorable to Dorsey, considered for the purpose of determining whether Honda was entitled to a directed verdict on liability and whether the judge erred in setting aside the award for punitive damages.

In the mid-1960's Honda developed a small, light-weight automobile with high gas mileage. It exported the vehicle to the United States and Europe to meet the demand for a low-price, economical car. The

---

1. The jury was instructed on negligent design with respect to the manufacturer only.

2. Florida law permits joinder of an insurer as a codefendant. *See Shingleton v. Bussey*, 223 So.2d 713 (Fla.1969); *Beta Eta House Corp. v. Gregory*, 237 So.2d 163 (Fla.1970).

3. The jury awarded punitive damages against the manufacturer only. The plaintiffs did not seek punitive damages against the distributor.

model sold in the United States, the AN 600, was the first automobile sold by Honda in this country. It weighed approximately 1,356 pounds.

Glen K. Dorsey purchased a new 1971 Honda AN 600 in early 1972. He chose the vehicle because it was economical and offered high gas mileage. Dorsey, who is approximately 6 ft. 1½ in. tall, testified that he found the vehicle comfortable to drive and that it had adequate head and leg room. Dorsey was unaware of the AN 600's specific crash characteristics although he had a general awareness that if a large sedan hit a small vehicle such as a Honda the small vehicle might be severely damaged.

In March 1972 Dorsey's AN 600 collided with a standard size Ford automobile weighing approximately 3,600 pounds. The Honda was traveling at approximately 30 m. p. h. The Ford had braked and was barely moving, at 3 to 5 m. p. h. Dorsey was wearing his lap and shoulder belts and was driving with due care. In the collision, the left "A pillar," the post at the left of the windshield and between the windshield and window, deformed rearward more than ten inches. Dorsey's seat came off its track, ramming him forward and to the left. His seat belt did not adequately restrain him in the collision. Dorsey's legs were jammed against the front of the passenger compartment, causing compound fractures, and his head hit the deformed A pillar, causing massive permanent brain injury. This accident was the equivalent of a 20 m. p. h. barrier crash.[4]

Before Honda began exporting the AN 600 to the United States employees of its wholly owned subsidiary, Honda Research and Development (Honda R&D) conducted crash tests on prototype vehicles in Japan. Honda R&D is not a party to this suit. These tests revealed that a dummy the size of an average adult male, restrained with lap and shoulder belts, would strike the interior front part of the passenger compartment in a 30 m. p. h. barrier crash test. In both a barrier crash test and a test

collision against an average size American vehicle the dummy's head struck the A pillar, which had deformed inward. Despite the results of these tests and a recommendation by an employee of Honda R&D to enlarge the vehicle to improve safety, Honda exported the AN 600 to the United States without increasing the vehicle's size or body strength or warning purchasers of its crash characteristics.

In considering the sufficiency of the evidence to support the jury finding of willful, wanton or reckless conduct, it is of no moment that the substantial evidence of such conduct relates to employees of Honda R&D. In the pre-trial order joined in by plaintiffs, Honda and Continental, it was agreed that Honda contended:

> that the vehicle manufactured by Honda Motor Company Ltd. was reasonably designed and manufactured and that Honda Motor Company, Ltd. used reasonable care in the design and testing of all the composite safety features incorporated in the vehicle.

The following principles of law were agreed upon:

1. Honda Motor Company Ltd., as the manufacturer is liable for any negligence of [sic—"or"] breach of warranty with respect to any component part which is defectively designed and manufactured even though such part may have been obtained from a third-party supplier.

2. Honda Motor Company Ltd. as manufacturer, impliedly warranted that the vehicle involved in this action was reasonably crashworthy, i. e., that reasonable care had been used in the design and manufacture of the car to eliminate unreasonable risk of foreseeable injury.

3. Honda Motor Company Ltd., as manufacturer, is strictly liable in tort if it placed on the market a product that is defective, i. e., unreasonably dangerous in that it failed to eliminate unreasonable risk of foreseeable injury.

4. Honda Motor Company Ltd., as a manufacturer, is under a duty to warn of

---

**4.** Barrier crash tests involve head-on collisions against a concrete wall.

any dangers inherent in the use of its vehicles in order to eliminate unreasonable risk of foreseeable injuries.

An issue of fact to be litigated was described as:

Whether reasonable care was used in the design and testing of the car so as to eliminate unreasonable risk of foreseeable injury?

By the pre-trial order, Honda, knowing that design and testing of the car had been done by Honda R&D, accepted responsibility for the acts of Honda R&D in design and testing. Thus, in assaying the evidence of wrongful conduct the acts of Honda R&D are treated as the acts of Honda.

At trial experts testified to a number of measures that would improve the AN 600's safety in collisions. These included lengthening the hood, enlarging the passenger compartment, installing a heavier engine, using heavier metals in construction, reinforcing the structure by using metal "bones" to fortify the passenger compartment and the A pillars, using a full frame out to the front bumper, redesigning the shoulder belt to reduce the likelihood of "submarining" the passenger, and making seat belts of a fabric with less elasticity.

The AN 600 design met certain federal Motor Vehicle Safety Standards in effect at the time governing seat assemblies, seat belt assemblies, fuel tank integrity, and displacement of the steering column. While the federal statute under which these regulations were passed preempts inconsistent state standards, 15 U.S.C. § 1392(d), compliance with the federal regulations "does not exempt any person from any liability under common law," 15 U.S.C. § 1397(c).

## II. LIABILITY OF HONDA

Honda contends that it was entitled to a directed verdict on all issues on the ground that the sole proximate cause of Dorsey's injuries was the comparative size of the two vehicles involved in the collision and that under so-called "crashworthiness" cases, notably *Dreisonstok v. Volkswagenwerk, A.G.*, 489 F.2d 1066 (4th Cir. 1974) (Virginia law), one who buys a small car

because it is small cannot complain if he is injured as a consequence of the design characteristic—small size—that he sought. This argument is discussed and rejected below in part III, Punitive Damages.

## III. PUNITIVE DAMAGES

The critical portion of the district court's order setting aside the punitive damages is this:

In the present case, it was basically the diminutive size of the Defendants' product and the difference between its size and that of standard American vehicles which rendered the Defendants' vehicle unsafe in the event of a collision. See the testimony of James McElhaney, Plaintiffs' expert. This source of potential harm, however, was obvious on casual observation. Mr. Dorsey recognized when he bought the automobile that it could sustain serious damage in the event of a collision with a larger automobile. Finally, the evidence in the present case indicates as mentioned above that the Defendants' vehicle was manufactured in accordance with all applicable United States Government standards. Under these circumstances, the conduct of the Defendant Honda cannot be said to fall within the ambit of those activities which under Florida law justify an award of punitive damages.

The basis for the district judge's judgment n. o. v. respecting punitive damages thus seems to be that a finding of recklessness was foreclosed as a matter of law because the basic safety problem was the vehicle's diminutive size and because the vehicle complied with federal Motor Vehicle Safety Regulations. Additionally, Honda argues that Florida would not permit punitive damages in a products liability case. We conclude that the district court erred in setting aside the award of punitive damages.

*Diminutive size.* Certainly the AN 600's diminutive size compared to a "standard" American vehicle was "obvious on casual examination." Dorsey acknowledged that

he had bought the car because it was economical (and impliedly it was economical because small) and that he knew it might be severely damaged in a collision with a "standard size" car. The district court reasoned that the manufacturer could not be liable in damages for designing and selling a diminutive car to one who desired it because it was diminutive and who knew the risks from collision that were attendant to its size. The flaw in this reasoning, so far as this case is concerned, is the district court's characterization of the plaintiffs' claims as "basically" that the diminutive size of the AN 600 was so far different from the size of a standard American vehicle that the AN 600 was unsafe in a collision.

■ The district court's cryptic holding presumably draws on the "crashworthiness" decisions which, speaking generally, interpret the extent of the automobile manufacturer's duty to design a vehicle that protects its occupants from injury in collisions not caused by a defect in the vehicle. Florida imposes on the automobile manufacturer a duty to use reasonable care to design and manufacture a vehicle that eliminates unreasonable risk of foreseeable injury to the occupants in the event of a collision. *Ford Motor Co. v. Evancho*, 327 So.2d 201 (Fla. 1976) (adopting the reasoning of *Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir. 1968)). The district court seemed to reason that the manufacturer does not violate this duty of care when the design feature that poses a risk of injury should a collision occur (here the size of the car, according to the district court), is obvious, useful, and indeed intentionally selected by the purchaser, *see Dreisonstok v. Volkswagenwerk, A. G.*, 489 F.2d 1066 (4th Cir. 1974) (Virginia law). In *Dreisonstok*, the Fourth Circuit assumed that Virginia would adopt the "crashworthiness" rule of *Larsen v. General Motors, supra*, but held that the manufacturer did not violate any duty of ordinary care by designing a van that achieved the unique feature of maximum cargo space by advancing the driver's seat as far forward

as possible, thereby eliminating the protection afforded passengers in a conventional car who are "in the middle of the vehicle" protected by the engine and hood in front of them.

Reliance on *Dreisonstok* is based on a misconception of the plaintiffs' case. The plaintiffs' challenge is not directed to the AN 600's diminutive size but to design features other than the size of the vehicle.

■ There was evidence sufficient for the jury to find causal factors of injury other than size of the vehicle. The evidence supported a conclusion that although this was a relatively moderate collision the A pillar deformed inward and Dorsey's seat assembly broke loose from its moorings and jammed him forward, which fractured his legs and impelled his head against the deformed A pillar. The safety of the seat assembly has no necessary relation to the size of the car. Nor was the A pillar's deformation necessarily related to the size of the car. Reinforcing the car with metal bones would not require increasing the size of the car, nor would changing the frame design or installing a larger engine. There was evidence that Honda used lighter gauge metal than some other small car manufacturers, which again is unrelated to size. Finally, the jury could find that the seat belts were unduly elastic in comparison to the small size of the passenger compartment, permitting excess frontward movement before restraining the user, and that less elastic materials were available. Adopting a different seat belt material would not require enlarging the car. In short, Dorsey's experts identified several deficiencies unrelated to size. Dorsey's willingness to buy a car with a small passenger compartment is not a willingness to be supplied with a passenger compartment that is negligently designed or defectively constructed.

We thus do not need to decide whether and to what extent Florida would adopt *Dreisonstok*.[5] That case only involved a

5. *Nicolodi v. Harley-Davidson Motor Co.*, 370 So.2d 68 (Fla.Dist.Ct.App.1979), held that the

crashworthiness doctrine applies to motorcycles, reversing a trial court's dismissal of a

contention that one structural configuration should have been chosen over another. Moreover, "[t]here was no evidence in the record that there was any practical way of improving the 'crashability' of the vehicle that would have been consistent with the peculiar purposes of its design." 489 F.2d at 1074. In the case before us more is involved than choosing a small car over one of "standard" size. There is substantial evidence that tests carried out by Honda demonstrated that, apart from being small, the AN 600 had serious design deficiencies creating unreasonable risk of harm to passengers. Moreover, there was testimony, some of it from Honda's own engineers, that there were practical ways of improving its "crashability" that would have been consistent with the "peculiar purposes of its design," diminutive size.

The foregoing evidence was submitted to the jury under unexceptionable instructions governing willful and wanton conduct. The jury found wantonness, willfulness or reckless indifference to the rights of others. Under *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc), the evidence permitted the jury to reach this conclusion.

*Compliance with government standards.* The district court determined that compliance with federal safety standards precluded an award of punitive damages. Reliance upon this argument is questionable because Honda did not articulate the compliance argument in its motion for directed verdict, offered no jury instruction on the point, and at the charge conference told the court that it did not contend that compliance with the federal safety standards proved it did not do anything wrong. However, it seems that the court concluded that compliance with these standards negates recklessness as a matter of law. We disagree.

As an initial matter we note that 15 U.S.C. § 1397(c) provides that compliance with the federal regulations "does not exempt any person from any liability under common law." Honda cites no support for its contention that liability under common law does not mean liability for punitive damages under common law. We do not rest our decision on this statute, however, because the purpose of § 1397(c) may be to disclaim any intent to preempt state common law theories of product liability in the automotive design area rather than to mandate that the factfinder in a common law action may not consider compliance as evidence of care if state law permits that argument. *Cf.* S.Rep. 1301, 89th Cong., 2d Sess., *reprinted in* [1966] U.S.Code Cong. & Ad.News 2709, 2720.

■ Generally speaking, compliance with regulatory standards may be admissible on the issue of care but does not require a jury to find a defendant's conduct reasonable. *See* Restatement (Second) of Torts § 288C; W. Prosser, Handbook of the Law of Torts § 36 at 203–04 (4th ed. 1971); *Bruce v. Martin-Marietta Corp.*, 544 F.2d 442, 446 (10th Cir. 1976) (Maryland law); *Salmon v. Parke, Davis & Co.*, 520 F.2d 1359, 1362 (4th Cir. 1975) (North Carolina law); *Raymond v. Riegel Textile Corp.*, 484 F.2d 1025, 1027 (1st Cir. 1973) (New Hampshire law). Honda offers no persuasive reason why compliance will as a matter of law be merely admissible on the issue of whether the defendant's conduct is reasonable but an absolute defense on the issue of whether its conduct is willful, reckless, or outrageous. *See Silkwood v. Kerr-McGee Corp.*, 485 F.Supp. 566, 583–86 (W.D.Okl.1979) (compliance with federal standards does not prevent awarding punitive damages if the defendant's conduct is reckless); *Gryc v. Dayton-Hudson Corp.*, 297 N.W.2d 727 (Minn.), *cert. denied*, 449 U.S. 921, 101 S.Ct. 320, 66 L.Ed.2d 149 (1980).

■ Moreover, the federal Motor Vehicle Safety Act Standards are unrelated to several of the design deficiencies developed by the plaintiffs' evidence. The district judge's opinion presumably refers to evidence of compliance with MVSS 204, governing displacement of the steering wheel, MVSS 207, governing strength of the seat

---

complaint alleging that a motorcycle should have been designed to protect a passenger's legs from injury in a collision.

assembly, MVSS 209, governing the strength and elasticity of the seat belts, MVSS 210, governing seat belt assembly anchorages, and MVSS 301, governing vulnerability of the fuel tank. While the regulations governing seats and seat belts are relevant to portions of the plaintiffs' case, none of the regulations applicable to Dorsey's car governed the strength of the A pillar or the overall ability of the passenger compartment to protect occupants in a crash.[6] Furthermore, plaintiffs' expert explained that compliance with the standard governing seat belt stretch would be meaningless in terms of safety if the car was designed to place the driver's head so close to the front of the passenger compartment that it would be vulnerable in a crash. In short, we believe that Florida would not hold as a matter of law that compliance with the applicable regulations, which were far from comprehensive, precluded any finding of recklessness no matter how egregious Honda's conduct had been in ignoring tests that indicated design flaws of a different nature.

■ *Propriety of punitive damages in a products liability case.* Finally, Honda urges that punitive damages are not available in this case because liability in a "products liability" case is predicated on the nature of the product and not on the character of the defendant's actions, whereas in assessing punitive damages the character of the act is paramount. This is not a pure negligent design case or a pure products liability case based on no more than a theory of strict liability. The evidence permitted the jury to find that defendant knew that it was creating unreasonable risks not necessarily incident to the unique design desired by the purchaser and received recommendations for eliminating or minimizing these unreasonable risks but did not accept them. The jury not only returned separate special verdicts against the defendant on strict liability, implied warranty, negligent design, and negligent failure to warn, but also returned a finding that Honda had acted with "wantonness, willfulness or reckless indifference to the rights of others." The punitive damage award is thus based directly upon the nature of Honda's conduct. Thus we do not face whether Florida would permit punitive damages in a so-called "products liability" case where the defendant was guilty of only negligent design or where liability was based solely upon strict liability in tort.

Honda further contends that because there are no Florida products liability cases awarding punitive damages Florida, "by negative implication," would deny punitive damages in this type of case. The Florida opinions that Honda cites do not indicate that punitive damages had been sought. *See West v. Caterpillar Tractor Co.,* 336 So.2d 80 (Fla.1976); *Ford Motor Co. v. Evancho,* 327 So.2d 201 (Fla.1976); *Tampa Drug Co. v. Wait,* 103 So.2d 603 (Fla.1958); *Nicolodi v. Harley-Davidson Motor Co.,* 370 So.2d 68 (Fla.Dist.Ct.App.1979); *Sansing v. Firestone Tire & Rubber Co.,* 354 So.2d 895 (Fla.Dist.Ct.App.), *cert. denied,* 360 So.2d 1250 (Fla. 1978); *Clement v. Rousselle Corp.,* 372 So.2d 1156 (Fla.Dist.Ct.App. 1979), *cert. denied,* 383 So.2d 1191 (Fla. 1980). Those cases therefore do not appear to address the question.[7]

We believe that Florida would permit punitive damages in this case. For nearly a century it has been recognized in Florida

---

**6.** MVSS 208, a test governing the passenger compartment's overall ability to protect passengers in a crash, did not apply to automobiles manufactured prior to January 1, 1972. *See* C.F.R. § 571.208. Dorsey's car was manufactured June 11, 1971.

**7.** While no Florida decision squarely addresses the availability of punitive damages as a general matter in products liability litigation, dictum in *Campbell v. Government Employees Insurance Co.,* 306 So.2d 525, 531 (Fla.1974), noted the thalidomide drug cases in illustrating the range of cases in which courts have awarded punitive damages. *Auto Specialties Manufacturing Co. v. Boutwell,* 335 So.2d 291 (Fla.Dist. Ct.App.), *cert. dismissed,* 341 So.2d 1080 (Fla. 1976), upheld a trial judge's decision to set aside a jury verdict for punitive damages in a products liability case because there was insufficient evidence of recklessness without questioning the broader propriety of punitive damages were recklessness established.

that punitive damages may be awarded when, inter alia, the defendant's conduct shows wantonness or recklessness or reckless indifference to the rights of others, *Florida Southern Railway v. Hirst*, 30 Fla. 1, 11 So. 506 (1892). Florida courts have permitted punitive damages in a wide range of tort cases where the plaintiff establishes such conduct. *See, e. g., Ingram v. Pettit*, 340 So.2d 922 (Fla.1976) (injuries caused by intoxicated driver); *Campbell v. Government Employees Insurance Co.*, 306 So.2d 525 (Fla.1974) (insurer's refusal to settle claim); *Buie v. Barnett First National Bank of Jacksonville*, 266 So.2d 657 (Fla. 1972) (bank wrongfully repossessed plaintiff's automobile); *La Porte v. Associated Independents, Inc.*, 163 So.2d 267 (Fla.1964) (employee threw garbage can at plaintiff's dog, killing it); *Ocean Mile Galleries, Inc. v. Huguenor*, 351 So.2d 1043 (Fla.Dist.Ct.App. 1977) (misrepresentations in sale of jewelry); *Doral Country Club, Inc. v. Lindgren Plumbing Co.*, 175 So.2d 570 (Fla.Dist.Ct. App.) (conversion of plumbing supplies), *cert. denied*, 179 So.2d 212 (Fla.1965). *Cf. ABC-Paramount Records, Inc. v. Topps Record Distributing Co.*, 374 F.2d 455 (5th Cir. 1967) (Florida law; wrongful interference with contractual relationship). Punishment and deterrence, the basis for punitive damages in Florida as elsewhere, *see Campbell*, 306 So.2d at 531, are no less appropriate with respect to a product manufacturer who knowingly ignores safety deficiencies in its product that may endanger human life than in the cases described above.[8]

Many other jurisdictions have permitted punitive damages in products liability cases upon a proper showing of outrageous or reckless conduct. *See Gillham v. Admiral Corp.*, 523 F.2d 102 (6th Cir. 1975) (Ohio law), *cert. denied*, 424 U.S. 913, 96 S.Ct. 1113, 47 L.Ed.2d 318 (1976); *Hoffman v. Sterling Drug, Inc.*, 485 F.2d 132 (3d Cir. 1973) (Pennsylvania law); *Grimshaw v. Ford Motor Co.*, 119 Cal.App.3d 757, 174 Cal.Rptr. 348 (1981), *petitions for hearing filed*, (Cal. July 7, 1981); *Leichtamer v. American Motors Corp.*, No. 5223 (Ohio Ct. App. July 30, 1980) (awarding punitive damages in a "crashworthiness" case), *affirmed*, 424 N.E.2d 568 (Ohio 1981); *Wangen v. Ford Motor Co.*, 97 Wis.2d 260, 294 N.W.2d 437, 444 (1980) (awarding punitive damages in a "crashworthiness" case); *Wussow v. Commercial Mechanisms, Inc.*, 97 Wis.2d 136, 293 N.W.2d 897 (1980); *Vollert v. Summa Corp.*, 389 F.Supp. 1348 (D. Hawaii 1975); *Drake v. Wham-O Manufacturing Co.*, 373 F.Supp. 608 (E. D.Wis.1974); *Gryc v. Dayton-Hudson Corp.*, 297 N.W.2d 727, 732–33 (Minn.), *cert. denied*, 449 U.S. 921, 101 S.Ct. 320, 66 L.Ed.2d 149 (1980); *Sturm, Ruger & Co. v. Day*, 594 P.2d 38, 46–47 (Alaska 1979); *Toole v. Richardson-Merrell Inc.*, 251 Cal.App.2d 689, 60 Cal.Rptr. 398 (1967); *Moore v. Jewel Tea Co.*, 116 Ill. App.2d 109, 253 N.E.2d 636 (1969), *aff'd*, 46 Ill.2d 288, 263 N.E.2d 103 (1970); *Rinker v. Ford Motor Co.*, 567 S.W.2d 655, 668–69 (Mo.App.1978). *Cf. American Laundry Machinery Industries v. Horan*, 45 Md.App. 97, 412 A.2d 407, 419–20 (Md.Ct.Spec.App.1980) (punitive damages available in products liability action upon sufficient showing of recklessness, but finding insufficient evidence of recklessness).

---

**8.** The conclusion that we have reached is reinforced by a decision of the Florida Court of Appeals handed down since the preparation of this opinion. *American Motors Corporation v. Ellis*, 403 So.2d 459, 6 Fla.Law Weekly, 1808 (Fla.Ct. of App., 5th District, 8/14/81). Plaintiffs contended that the manufacturer of their automobile acted with knowledge and reckless indifference to the rights and safety of others with respect to the design of the gasoline tank. The trial court granted a directed verdict against plaintiffs on their claim for punitive damages. The Court of Appeals reversed, holding that the jury could have found that the manufacturer was aware of the catastrophic results of fuel tank fires in its vehicle from its own crash tests and chose not to implement the recommendations of its engineers to relocate the fuel tank. While there was evidence that the choice to retain the location was a valid business judgment the jury could reasonably infer that the manufacturer was aware that the fuel tank was defective and dangerous but chose not to seek a safer alternative design. In view of this available inference the directed verdict was error and a new trial on punitive damages was required.

## IV. LIABILITY OF CONTINENTAL CASUALTY

Continental is a participant in a complicated and sophisticated insurance program involving several layers or levels of primary and excess insurance. It is the liability insurer covering Honda for losses in excess of coverage provided by underlying policies with other insurers. Continental acknowledges that it is the insurer responsible for covering the punitive damage award.

The remaining issue concerns whether Florida's public policy that one may not insure against punitive damages precludes a finding that Continental is liable under its policy for the punitive damages awarded against Honda. The key to this question is whether Honda's liability for punitive damages is premised on its own fault or is merely vicarious.

■ Honda's initial argument is procedural. It contends that Continental's failure specifically to plead illegality as an affirmative defense under Rule 8(c) foreclosed any consideration of the coverage issue. With this we disagree. The pleadings sufficed to raise insurance coverage as an issue in the case. The plaintiffs claimed compensatory damages and asserted the liability policy as the basis for Continental's joinder in the action and its potential liability. By an amended complaint plaintiffs requested punitive damages as well. We agree with the district court that Continental was not required to plead a conclusion of law to the effect that it might be liable to cover compensatory damages if awarded but not punitive damages.

■ Continental's failure to request from the jury a special verdict concerning the coverage issue did not foreclose it from requesting the trial judge to determine the issue in post-trial proceedings. Under Rule 49, if the jury's special verdicts do not cover an issue of fact raised by the pleadings, the remaining issue is for the judge to determine. The trial judge correctly proceeded to determine the issue of coverage.

■ We are not able, however, to affirm the trial judge's determination that as a matter of fact and law Florida's public policy forbids insurance coverage of the punitive damages awarded against Honda. The basic rule of Florida law is that public policy forbids insurance coverage of punitive damages in order that the punitive and deterrent purposes of these damages will not be thwarted. *Northwestern National Casualty Co. v. McNulty*, 307 F.2d 432 (5th Cir. 1962); *Nicholson v. American Fire & Casualty Insurance Co.*, 177 So.2d 52 (Fla. Dist.Ct.App.1965). Florida's intermediate appellate courts, however, have permitted insurance coverage of punitive damages where the insured party was not itself at fault but was merely vicariously liable for punitive damages based on the reckless conduct of another. *See Hartford Accident & Indemnity Co. v. U. S. Concrete Pipe Co.*, 369 So.2d 451, 452–53 (Fla.Dist.Ct.App.1979) (respondeat superior); *Travelers Insurance Co. v. Wilson*, 261 So.2d 545 (Fla.Dist.Ct. App.1972); *Sterling Insurance Co. v. Hughes*, 187 So.2d 898 (Fla.Dist.Ct.App.) (respondeat superior), *cert. denied*, 194 So.2d 622 (Fla.1966). Honda's post-trial argument contended: any recklessness proved by the plaintiff was that of Honda R&D, the wholly owned subsidiary, rather than of Honda Motor, the defendant; punitive damages were therefore awarded against Honda Motor on a theory of vicarious liability; insurance coverage was therefore permissible.

The district court accepted these legal premises but ruled that the policy of *Northwestern National Casualty Co. v. McNulty* forbade insurance coverage on the facts of this case:

> In the present case, Honda's liability arose out of the adoption of a particular automotive design and the sale of its product manufactured under same. This conduct could not be deemed passive under any view of the evidence or the exception to the *McNulty* policy developed by Florida appellate courts. On the present record, the reasons for the *McNulty* policy clearly apply and any liability for punitive damages arising out of the present case may not be imposed on the insurance company defendants.

The reference to "adoption" of a design by Honda and subsequent manufacture and sale under this design seems to us to refer to conduct by Honda itself as opposed to conduct of employees of Honda R&D. The description of this conduct—adoption, manufacture and sale—as not "passive" implies that liability of Honda arose out of its own "active" (and faulty) conduct as opposed to vicarious liability because of acts done by Honda R&D.

Thus construed the order is not supported by the evidence. The substantial evidence of conduct willful, wanton, or in reckless disregard of the rights of others concerns actions and failures of Honda R&D and its employees. Neither Continental nor the district court points us to substantial evidence that any responsible person of Honda was reckless or even that any such person had knowledge of the results of the tests conducted by Honda R&D or of the recommendations of Honda R&D employees that the design of the AN 600 be changed. The liability of Honda is, therefore, not based upon its own acts but upon those of Honda R&D and its employees, for which Honda in the pre-trial order accepted responsibility. Absent the pre-trial order, plaintiffs would have been required to prove the existence of a relationship between Honda and Honda R&D that would make Honda responsible for acts of Honda R&D and its employees. There was not such proof.

This takes us to the issue of whether, in the absence of such proof, the pre-trial order, joined in by Continental, operates to establish the existence of a relationship that is either within, or without, the vicarious liability exception to Florida's policy that one may not insure against punitive damages. It may be contended that the pre-trial order is an acceptance by Honda of vicarious responsibility for acts of Honda R&D and its employees. Also it can be argued that the order is merely a recognition by Honda that Honda R&D is a "mere instrumentality" of Honda. *See Bendix Home Systems, Inc. v. Hurston Enterprises, Inc.,* 566 F.2d 1039, 1041 (5th Cir. 1978) (Fla. law); *St. Petersburg Sheraton Corp. v. Stuart,* 242 So.2d 185, 190 (Fla.Dist.Ct.App.

1970). *Cf. Markow v. Alcock,* 356 F.2d 194, 197–98 (5th Cir. 1966); Annot., 7 A.L.R.3d 1343 (1966). Evidence concerning the relationship between parent and subsidiary was skimpily developed at trial. The record discloses that Honda R&D is a wholly owned subsidiary of Honda and that the current chief engineer of Honda R&D testified, regarding the function of the laboratory he directs, that "to Honda Companies which manufacture cars, we sell blueprints." It is not beyond possibility that Honda accepted responsibility for Honda R&D's acts as a tactical matter or because it did not want the relationship between the two companies publicly aired, but we find nothing in the record on these possibilities.

Determination of the Honda-Honda R&D relationship, and of the consequences of it under the vicarious liability exception to the Florida policy against insuring against punitive damages, must be addressed by the district court in the light of this opinion. We note Florida cases addressing an insurance company's liability for punitive damages in the face of an equivocal verdict. *See Morrison v. Hugger,* 369 So.2d 614 (Fla. Dist.Ct.App.1979), holding that if it is not possible to tell whether a jury rendered its verdict on a vicarious liability theory or another theory the insurer is responsible for punitive damages. The applicability of these cases is for the district court in the first instance.

AFFIRMED in part, REVERSED in part, and REMANDED with directions to reinstate the punitive damages award in favor of plaintiff Glen K. Dorsey, Jr. and for further proceedings not inconsistent with this opinion.