Shannon MOORE, Individually
and By Next Friend, Donal
R. Moore, Appellants,

v.

BRUNSWICK BOWLING & BILLIARDS
CORPORATION, MERCURY DIVI-
SION, Individually and d/b/a Mercury
Outboard Motors and/or Mercruiser,
and Vivian Industrial Plastics, Inc., In-
dividually and d/b/a V.I.P. Boats, Ap-
pellees.

No. 01–91–00427–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 13, 1993.

Rehearing Denied June 3, 1993.

Neal H. Paster, Neal H. Paster & Associates, Houston, for appellants.

James B. Lewis, Kathleen Walsh Beirne, Houston, for appellee Brunswick Bowling & Billiards Corp.

H. Lee Lewis, Jr., Houston, for appellee Vivian Industrial Plastics, Inc.

Before DUGGAN, DUNN and O'CONNOR, JJ.

## OPINION

DUGGAN, Justice.

Shannon Moore and her next friend, Donal R. Moore (the plaintiffs or the appellants), appeal from summary judgment granted in favor of Brunswick Bowling & Billiards Corporation, Mercury Division, Individually and d/b/a Mercury Outboard Motors and/or Mercruiser, and Vivian Industrial Plastics, Inc., Individually and d/b/a V.I.P. Boats (the defendants or the appellees). The sole point of error raised by the appellants is that the trial court erred in granting summary judgment based on the doctrine of federal preemption pursuant to the Federal Boat Safety Act. We affirm.

While swimming in a river, Shannon Moore was injured when she was struck by the propeller of a motorboat. The motorboat was manufactured by V.I.P. and included a Mercury motor and drive unit. The motor unit did not have a propeller guard of any kind. The appellants filed suit against the boat's owners and the operator, and later joined Mercury as a products liability defendant under both negligence and strict liability theories. V.I.P. was sued under strict liability theories. The foundation of the appellants' claims against the appellees is that during the manufacture of the motor, Mercury failed to incorporate a propeller guard on its motor unit.

The appellee, Mercury, moved for summary judgment on the grounds that the Federal Boating Safety Act of 1971, 46 U.S.C.A. §§ 4301–4311 (West 1984) (FBSA), preempted any right to the appellants' common-law products liability or negligence causes of action for defective design, manufacture, or marketing. The trial court granted Mercury's motion, and also concluded that the preemption issue was dispositive of the claims against V.I.P. as well. The trial court granted the appellees' motion for severance, whereupon the summary judgment became final for the purposes of appeal.

■■■ Summary judgment is proper for a defendant if it conclusively establishes all elements of its affirmative defense as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The movant must show there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986). The issue of federal preemption is a question of law for the court that can serve as a proper basis for summary judgment. *See Cathey v. Metropolitan Life Ins. Co.*, 764 S.W.2d 286, 293 (Tex.App.—Houston [1st Dist.] 1988), *aff'd*, 805 S.W.2d 387, 388 (Tex.), *cert. denied*, — U.S. —, 111 S.Ct. 2855, 115 L.Ed.2d 1023 (1991) (statutory and common-law claims preempted by ERISA). If a defendant establishes its right to summary judgment by conclusively proving federal law preempts the plaintiff's claim, the plaintiff can defeat summary judgment only by showing that federal preemption *does not* apply. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex.1989).

■■■ The doctrine of preemption has been discussed recently by the Supreme Court in the context of a common-law claim against certain cigarette manufacturers. *See Cipollone v. Liggett Group, Inc.*, — U.S. —, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). In *Cipollone*, the Court emphasized that, pursuant to the supremacy clause of the Constitution, any state law conflicting with federal law is without effect. *Id.* at —, 112 S.Ct. at 2617. Nevertheless, the threshold assumption in our analysis is that the historic police powers of the state are not to be superseded by federal law unless that is the clear and manifest purpose of Congress. *Id.* at —, 112 S.Ct. at 2617. Thus, to determine whether a claim is preempted, a court must examine congressional intent. *Id.* at —, 112 S.Ct. at 2617–18.

■■■ A federal statute may preempt state law (1) explicitly, (2) impliedly, where federal legislation occupies the entire field of regulation and leaves no room for state law, or (3) where there is an actual conflict between state law and a federal statute such that the state law acts as an obstacle to the objectives of Congress. *Int'l Paper Co. v. Oullette*, 479 U.S. 481, 491–92, 107 S.Ct. 805, 811–12, 93 L.Ed.2d 883 (1987); *see English v. General Elec. Co.*, 496 U.S. 72, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). Federal regulations can preempt state law just as completely as federal statutes. *Hillsborough County v. Automated Medical Lab., Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2374, 85 L.Ed.2d 714 (1985). Additionally, when Congress has included in the legislation a provision explicitly addressing preemption, and that provision provides a reliable indication of congressional intent with respect to state authority, there is no need to infer congressional intent to preempt state law from the substantive provisions of the legislation. *Cipollone*, — U.S. at —, 112 S.Ct. at 2618.

Two provisions of the FBSA are relevant to our analysis. The first addresses federal preemption and states:

Unless permitted by the Secretary under section 4305 of this title [46 U.S.C.S. § 4305], a State or political subdivision may not establish, continue in effect, or enforce a law or regulation establishing a recreational vessel or associated equipment performance or other safety standard or imposing a requirement for associated equipment (except insofar as the State or political subdivision may, in the absence of the Secretary's disapproval, regulate the carrying or use of marine safety articles to meet uniquely hazardous conditions or circumstances within the State) that is not identical to a regulation prescribed under section 4302 of this title [46 U.S.C.S. § 4302].

46 U.S.C.A. § 4306 (West 1984). Section 4311(g), the "savings clause," provides:

Compliance with this chapter [46 U.S.C.S. §§ 4301 *et seq.*] or standards, regulations, or orders prescribed under this chapter [46 U.S.C.S. §§ 4301 *et seq.*] does not relieve a person from liability at common law or under State law.

46 U.S.C.A. § 4311(g) (West 1984).

■■■ The United States Coast Guard has been delegated the exclusive authority to establish safety regulations. *Elliott v.*

*Brunswick Corp.*, 903 F.2d 1505, 1508 (11th Cir.1990), *cert. denied,* 498 U.S. 1048, 111 S.Ct. 756, 112 L.Ed.2d 776 (1991). Pursuant to that authority, the Coast Guard decided that propeller guards should not be required on recreational watercraft.[1] This action by the Coast Guard was a decision not to regulate and has the same legal consequence as if the Coast Guard had issued a safety standard declaring that the states are prohibited from adopting a regulation requiring propeller guards on recreational boats. *Mowery v. Mercury Marine, Division of Brunswick Corp.*, 773 F.Supp. 1012, 1016 (N.D.Ohio 1991). A federal decision to forego regulation in a given area may imply an authoritative federal determination that the area is best left unregulated, and in that event would have as much preemptive force as a decision to regulate. *Id.* (quoting *Arkansas Elec. Coop. Corp. v. Arkansas Public Serv. Comm'n*, 461 U.S. 375, 385, 103 S.Ct. 1905, 1913, 76 L.Ed.2d 1 (1983)); *see also Shields v. Outboard Marine Corp.*, 776 F.Supp. 1579, 1581 (M.D.Ga.1991).

 The purpose of section 4306 is to standardize regulations applicable to the manufacture of boats by precluding states from adopting requirements that are not identical or that conflict with federal standards. *See Farner v. Brunswick Corp.*, 239 Ill.App.3d 885, 180 Ill.Dec. 493, 497, 607 N.E.2d 562, 566 (1992); *Shields,* 776 F.Supp. at 1581; *Mowery,* 773 F.Supp. at 1014. A state jury award of damages based on a defendant's alleged failure to equip its product with such a guard would be tantamount to recognition of a state requirement that they be installed. *Farner,* 180 Ill.Dec. at 498, 607 N.E.2d at 567; *Mowery,* 773 F.Supp. at 1016; *see also MacMillan v. Redman Homes Inc.,* 818 S.W.2d 87, 95 (Tex.App.—San Antonio

1991, writ denied). Furthermore, we also conclude that the use of the word "law" in section 4306 further evidences Congress' intent that no common-law tort action be maintained based on the lack of a propeller guard. *See Farner,* 180 Ill.Dec. at 498, 607 N.E.2d at 567. We find that Congress intended to preempt a common-law tort action and the action in this case is thus barred under section 4306.

 The appellants also argue that the FBSA's "savings clause," 46 U.S.C.A. § 4311(a), allows them to assert their claim under state common law. We reject the appellants' contention. The purpose of the savings clause is to assure that, by merely complying with the standards promulgated under the FBSA, a manufacturer will not have a *per se* defense to liability in a products liability action. *Farner,* 180 Ill.Dec. at 498, 607 N.E.2d at 567.

The appellants rely on *Mulhern v. Outboard Marine Corp.*, 146 Wis.2d 604, 432 N.W.2d 130 (App.), *review denied,* 147 Wis.2d 890, 436 N.W.2d 31 (1988), and *Rubin v. Brutus Corp.*, 487 So.2d 360 (Fla. Dist.Ct.App.), *review denied,* 500 So.2d 543 (Fla.1986), in support of their position. However, these cases are readily distinguishable from this case. In *Mulhern,* the court affirmed a decision to hold a manufacturer liable under state law for injuries caused when a throttle installed by it on an outboard motor caused the boat to lunge forward, thus throwing the plaintiff overboard into the motor's propeller. 432 N.W.2d at 134–36. In *Rubin,* the court reversed summary judgment for the defendant where the plaintiff was injured when a boat seat came loose upon the boat's impact with a fixed channel marker. 487 So.2d at 360. Both *Mulhern* and *Rubin* interpret the savings clause to prevent a

---

1. Pursuant to the provisions of the Act, the Coast Guard directed the National Boating Safety Advisory Council to examine the feasibility of propeller guards designed to prevent accidents. After the study, which included public hearings, the National Boating Safety Board recommended that the Coast Guard take no action to require propeller guards because they decrease an operator's ability to maintain control over the boat at "normal" speeds, increase the proba-

bility of striking a body in the water, and create a possibility of causing greater injury. As a result, the Coast Guard declined to issue any regulations mandating the use of propeller guards. *Letter from Robert T. Nelson, Rear Admiral U.S. Coast Guard, Chief, Office of Navigation and Waterway Services to Mr. A. Newell Garden, Chairman, NBSAC,* at 1 (Feb. 1, 1990); 46 U.S.C.A. § 4302(c)(4) (West 1984).

manufacturer from using compliance with the minimum safety standards set forth in the FBSA as a defense against liability for defectively designed products that are *actually installed. Mowery*, 773 F.Supp. at 1017; *see Farner*, 180 Ill.Dec. at 498, 607 N.E.2d at 567.

This case is also distinguishable from a recent decision from this Court on a similar issue, *Ramsey v. Lucky Stores, Inc.*, 853 S.W.2d 623 (Tex.App.—Houston [1st Dist.], 1993, n.w.h.). *Ramsey* was a products liability lawsuit against the seller of a lifejacket. In finding for the defendants, the jury found the seller had adequately warned and instructed consumers on the use of the product and that the product was fit for the ordinary purpose for which it was intended. *Id.*, at 626. We affirmed the findings of the jury. *Id.* The appellees raised the cross-point that the appellants' cause of action against them was preempted by the FBSA. *Id.*, at 637. In examining whether the FBSA preempted products liability actions against sellers of products, we found that the product defect alleged in this case did not pose an actual conflict with the regulatory act. *Id.*, at 638. Because of this, we held that the savings clause found in the FBSA permitted an action against the *seller* of the product for failure to provide warnings in addition to those required by the statute. *Id.* This is not the issue we address here.

In the case before us, to allow a jury to conclude that the appellees' "failure" to provide a propeller guard constitutes a design defect would, in effect, grant to a single jury a regulatory power explicitly denied to all state legislatures. *Mowery*, 773 F.Supp. at 1017.

We overrule the appellants' point of error.

We affirm the judgment of the trial court.

O'CONNOR, J., dissenting.

O'CONNOR, Justice, dissenting.

I dissent. The issue before this Court is whether the trial court properly applied the doctrine of federal preemption. I would find that it did not and reverse.

### Federal preemption

The supremacy clause of the United States Constitution gives Congress the power to preempt state law. U.S. Const. art. VI, cl. 2; *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1909, 85 L.Ed.2d 206 (1985). Under that clause, state laws that "interfere with, or are contrary to the laws of congress, made in pursuance of the constitution" are invalid. *Wisconsin Pub. Intervenor v. Mortier*, —— U.S. ——, ——, 111 S.Ct. 2476, 2481, 115 L.Ed.2d 532 (1991). To determine if Congress has preempted a certain law, we start with the assumption that the historic police powers of the States are not to be superseded by a federal act unless it is a clear and manifest purpose of Congress. *Cipollone v. Liggett Group, Inc.*, —— U.S. ——, ——, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

Congress may take unto itself all regulatory authority over a field or share the task with the States. *Rice*, 331 U.S. at 230, 67 S.Ct. at 1152. Absent express preemption, there is a strong presumption against preemption. *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2618. Courts should not lightly infer preemption. *International Paper Co. v. Ouellette*, 479 U.S. 481, 491, 107 S.Ct. 805, 811, 93 L.Ed.2d 883 (1987). If, however, federal legislation is sufficiently comprehensive to infer that Congress left no room for supplementary state regulations, we will presume federal law preempts state law. *Id.* In addition to express and implied preemption, a state law is invalid if it actually conflicts with a federal statute. *Ouellette*, 479 U.S. at 491, 107 S.Ct. at 811.

Thus, a federal statute may preempt state law (1) explicitly, (2) implicitly, by occupying the entire field of regulation and leaving no room for state law, or (3) where there is an actual conflict between state law and a federal statute such that the state law acts as an obstacle to the objec-

tives of Congress. *Rice*, 331 U.S. at 230, 67 S.Ct. at 1152.

## The Boating Safety Act

Our task is to determine if, by the Boating Safety Act, Congress intended to take all the regulatory authority over the field of recreational boats or merely to waive it and share the area with the states. The Boating Safety Act's preemption clause, codified at 46 U.S.C. § 4306 (1987), provides:

> Unless permitted by the Secretary under section 4305 of this title, a State may not establish, continue in effect, or enforce a law or regulation establishing a recreational vessel or associated equipment that is not identical to a regulation prescribed under section 4302 of this title.[1]

### Express preemption

The Boating Safety Act does not expressly preempt state tort law. *Mulhern v. Outboard Marine Corp.*, 146 Wis.2d 604, 432 N.W.2d 130, 135 (1988). The purpose of the preemption clause "is to standardize regulations applicable to the manufacture of boats by precluding states from adopting requirements that conflict with federal standards." *Rubin v. Brutus Corp.*, 487 So.2d 360, 363 (Fla.Dist.Ct.App.1986), *review denied*, 500 So.2d 543 (Fla.1986) (the

Boating Safety Act did not preempt the application of the state crash-worthiness standards to a boating accident). In fact, the first sentence in the legislative history seems to indicate Congress intended to share authority over recreational boats with the states: "The purpose of the bill is to provide a *coordinated* national boating safety program involving both the Federal Government and the States." S.Rep. No. 248, 92nd Cong., 1st Sess. (1971) (emphasis added), *reprinted in* 1971 U.S.C.C.A.N. 1333, 1333; *cf. Rice*, 331 U.S. at 237, 67 S.Ct. at 1156 (Congress did not foreclose action by the states when it adopted the United States Warehouse Act).[2]

### Implied preemption

The Boating Safety Act does not implicitly preempt state law. To determine if the savings clause left any room for state causes of action, the court must first look to the language of the savings clause. *Ouellette*, 479 U.S. at 492, 107 S.Ct. at 812. The Boating Safety Act's savings clause states that:

> (g) Compliance with this chapter or standards, regulations, or orders prescribed under this chapter does not relieve any person from liability at common law or under State law.[3]

---

1. Compare the preemptive language in the Boating Safety Act to that in the Airline Deregulation Act, 49 U.S.C. § 1305(a)(1) (1987), which prohibits the states from enforcing any law "relating to rates, routes, or service," of any air carrier. In *Morales v. Trans World Airlines, Inc.*, — U.S. —, —, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992), the Supreme Court held that the phrase "relating to" in 49 U.S.C. app. § 1305(a)(1), was the key phrase and expressed a broad preemption purpose. There is no similar "key phrase" in the preemptive language of the Boating Safety Act.

 Also compare the preemptive language on the Boating Safety Act to that in the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1334 (1965) (Cigarette Labeling Act), which has two provisions regarding preemption:
 (a) No state statement relating to smoking and health, other than the statement required by section 4 of this Act shall be required on any cigarette package.
 (b) No statement relating to smoking and health, based on smoking and health shall be *imposed under State law* with respect to the advertising of any cigarette packages of which

 labeled in conformity with the provisions of this Act.
 In *Cipollone*, — U.S. at —, 112 S.Ct. at 2620–21, the Supreme Court held the phrase "imposed under State law" in the Cigarette Labeling Act did not preempt common law causes of action for damages.

2. To determine whether a claim is preempted, we may examine Congressional intent. *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299–300, 108 S.Ct. 1145, 1150, 99 L.Ed.2d 316 (1988). The purpose of the Boating Safety Act is to establish uniform minimum safety standards for boats and associated equipment. S.Rep. No. 248, 92nd Cong., 1st Sess., sec. 5 (1971) *reprinted in* 1971 U.S.C.C.A.N. 1333, 1338; *Mulhern*, 432 N.W.2d at 135.

3. Compare the language of the savings clause in the Boating Safety Act to that in the Airline Deregulation Act, 49 U.S.C. § 1506 (1987), which preserves "the remedies now existing at common law or by statute." The savings clause in the Boating Safety Act specifically states that compliance with the standards, regulations, or

46 U.S.C. § 4311(g) (1987). In the legislative history, it explains:

> This section is a Committee amendment and is intended to clarify that compliance with the Act or standards, regulations, or orders promulgated thereunder, does not relieve any person from liability at common law or under State law. *The purpose of the section is to assure that in a product liability suit mere compliance by a manufacturer with the minimum standards promulgated under the Act will not be a complete defense to liability.* Of course, depending on the rules of evidence of the particular judicial forum, such compliance may or may not be admissible for its evidentiary value.

S.Rep. No. 248, 92nd Cong., 1st Sess., sec. 40 (1971) *reprinted in* 1971 U.S.C.C.A.N. at 1352 (emphasis added). The savings clause leaves room for state law, and the Boating Safety Act does not occupy the entire field of regulation.

This savings clause in the Boating Safety Act is similar to the one in the National Traffic and Motor Vehicle Safety Act of 1966,[4] which also states that compliance with the Act does not exempt persons from liability under the common law. 15 U.S.C. § 1397(c) (1987). That provision has been construed to mean that compliance with regulations governing manufacturing does not necessarily relieve the manufacturer of liability under general tort law. *Dorsey v. Honda Motor Co.*, 655 F.2d 650, 656 (5th Cir.1981). Compliance with regulatory standards may be admissible on the issue of care but does not require a jury to find a defendant's conduct reasonable. RESTATEMENT (SECOND) OF TORTS § 288C (1965). The reasoning in the *Dorsey* case is persuasive for a similar construction of the Boating Safety Act.

Even if we assume Congress intended to dominate the field of boating safety standards, the savings clause negates the inference that Congress "left no room" for state causes of action. *See, e.g., Ouellette,* 479 U.S. at 492, 107 S.Ct. at 812 (savings clause in the Clean Water Act that said, "nothing in this section limits an injured party's right," did not save cause of action in other sections); *Rubin,* 487 So.2d at 363 (the Boating Safety Act was held not to be the exclusive ground for manufacturer's liability). Comparing the language of the Boating Safety Act's savings clause to that in the savings clause of the Clean Water Act, I note the language in this savings clause applies to the entire chapter. *Ouellette,* 479 U.S. at 492, 107 S.Ct. at 812.

Both *Mulhern* and *Rubin* interpret the savings clause to prevent a manufacturer from using compliance with the minimum safety standards in the Boating Safety Act as a defense against liability for defectively designed products that are actually installed. *Mowery v. Mercury Marine, Div. of Brunswick Corp.,* 773 F.Supp. 1012, 1017 (N.D.Ohio 1991).

In *Mulhern,* the court affirmed a decision to hold a manufacturer liable under state law for injuries caused when a throttle installed on an outboard motor, which was within the Boating Safety Act's standards, caused the boat to lunge forward throwing the plaintiff overboard into the propeller. 432 N.W.2d at 134–36. In *Rubin,* the court reversed the summary judgment for the defendant where the plaintiff was injured when a boat seat, which was also within the Boating Safety Act's standards, came loose upon the boat's impact with a fixed channel marker. 487 So.2d at 360.

Recently, the Supreme Court articulated a test to determine if common-law actions are implicitly preempted. The Court said we must make a central, straightforward inquiry asking whether the legal duty, the predicate of the damage action, satisfies the express terms of the preemption clause, giving the clause a narrow reading. *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2620 (in the Cigarette Labeling Act, the language narrowly construed was "requirement or prohibition ... imposed under State law").

---

orders prescribed under the Boating Safety Act does not relieve a person from liability—the very issue in this case.

**4.** 15 U.S.C. § 1381 (1987).

Here, the preemptive language we should narrowly construe is: "a State may not establish ... or enforce a law ... that is not identical to a regulation prescribed under section 4302 of this title." Section 4302 of the Boating Safety Act states that the Secretary "may" prescribe regulations. There is no regulation prescribed under section 4302 of the Act relating to propeller guards. Thus, giving the preemptive clause a narrow reading, I would conclude that a common-law action for damages does not conflict with any regulation in the Act.

### Preemption by conflict

Finally, the Boating Safety Act does not preempt by conflict. There is no conflict between state law and the Boating Safety Act such that the state law would be an obstacle to the objectives of Congress. The Boating Safety Act does not speak to the issue of the propeller guards.

### Preemption by refusal to act

Mercury contends the Boating Safety Act preempts this lawsuit because the Coast Guard officially decided against taking any action to require propeller guards. Mercury contends the Coast Guard's decision not to take any action is the equivalent to a finding that propeller guards are prohibited.

In 1988, the Coast Guard referred the issue of the feasibility of propeller guards to the National Boating Safety Advisory Council (NBSAC) to study, as required by 46 U.S.C. § 4302(c)(4) (1987). The NBSAC referred the issue to a subcommittee comprised of five individuals. The subcommittee held four days of hearings in three cities and heard presentations by 10 individuals, including a representative of Mercury, Mercury's experts who had testified at a lawsuit for Mercury, and the plaintiff's lawyer in that suit. As a result of the hearings, the NBSAC recommended the Coast Guard take no action to require propeller guards. The NBSAC report stated, according to the data currently available, propeller guards are not feasible for recreational boats because they: (1) decrease an operator's ability to maintain control over the boat at "normal" speeds; (2) increase the probability of striking a body in the water; and (3) create a possibility of causing greater injury.

The NBSAC made the following recommendation: "The U.S. Coast Guard should take no regulatory action to require propeller guards." *Report of the Propeller Guard Subcommittee* at 2. The Coast Guard adopted the NBSAC recommendation to take no regulatory action as its official policy. *Letter from Robert T. Nelson, Rear Admiral U.S. Coast Guard, Chief, Office of Navigation and Waterway Services to Mr. A. Newell Garden, Chairman, NBSAC,* at 1 (Feb. 1, 1990). In the letter announcing its decision to take no action, the Coast Guard did not adopt the rationale of the subcommittee (that propeller guards decrease an operator's ability to maintain control over the boat at "normal" speeds, increase the probability of striking a body in the water, and create a possibility of causing greater injury). Instead, it explained:

> *Coast Guard Position.* The regulatory process is very structured and stringe [sic] regarding justification. Available propeller guard accident data do not support imposition of a regulation requiring propeller guards on motorboats. Regulatory action is also limited by the many questions about whether a universally acceptable propeller guard is available or technically feasible all modes of boat operation. Additionally, the question of retrofitting millions of boats would certainly be a major economic consideration.

Mercury contends the Coast Guard's adoption of the recommendation has the same legal consequence as if the Coast Guard had issued a safety standard prohibiting the states from adopting a regulation requiring propeller guards on recreational boats. Mercury relies on *Elliott v. Brunswick Corp.,* 903 F.2d 1505, 1508 (11th Cir. 1990), *Mowery,* 773 F.Supp. at 1016, and *Shields v. Outboard Marine Corp.,* 776 F.Supp. 1579, 1581 (M.D.Ga.1991). All three cases hold the failure to adopt a regulation acts to prohibit any state action,

even under tort law. I would decline to follow *Elliott, Mowery,* and *Shields.*

Normally, regulation does not preempt state authority unless it declares its intent to do so with some specificity. *See California Coastal Comm'n v. Granite Rock Co.,* 480 U.S. 572, 583, 107 S.Ct. 1419, 1426, 94 L.Ed.2d 577 (1987). If an agency does not speak to the question of preemption, the courts are disinclined to hold the agency intended to preempt. *Hillsborough County, Fla. v. Auto. Med. Labs., Inc.,* 471 U.S. 707, 718, 105 S.Ct. 2371, 2377, 85 L.Ed.2d 714 (1985).

In addition, the courts have been reluctant to draw inferences from a legislative body's failure to act. *Schneidewind,* 485 U.S. at 306, 108 S.Ct. at 1153–54; *see, e.g., Red Lion Broadcasting Co. v. F.C.C.,* 395 U.S. 367, 381 n. 11, 89 S.Ct. 1794, 1802 n. 11, 23 L.Ed.2d 371 (1969) (unsuccessful attempt at legislation is not a good guide to legislative intent); *Dutcher v. Owens,* 647 S.W.2d 948, 950 (Tex.1983) (court would not consider bills that did not pass as evidence of the legislature's intent). The same rule should apply to a regulatory body's failure to adopt a regulation to require propeller guards.

The Coast Guard could have made one of at least three findings: (1) propeller guards should not be used on motorboats; (2) propeller guards should be used on motorboats; or (3) at this time, there is not enough information to take any regulatory action on the issue of whether propeller guards should be used on motor boats. Mercury contends that the results of the first and third option are the same: the decision to take no action is the same as the decision that propeller guards should not be used. I disagree.

In sustaining Mercury's claim of preemption of suits for failure to include propeller guards, which is not even regulated by the Coast Guard, it will inevitably lead to the conclusion that victims of all sorts of pleasure-boating accidents involving all types of defects are without any remedy. Today's holding will prevent any common-law tort litigation relating to boats.

We should adopt the reasoning of *Mulhern* and *Rubin,* sustain the Moores' sole point of error, and reverse and remand for a new trial.