BRENDA A. FARNER, Plaintiff-Appellant and Cross-Appellee, v. BRUNS-WICK CORPORATION, Defendant-Appellee and Cross-Appellant.

Second District   No. 2—91—1432

Opinion filed December 17, 1992.—Rehearing denied February 24, 1993.

Thompson, Lamont & Flaherty, P.C., of Aurora (Patrick M. Flaherty, of counsel), for appellant.

Lynn D. Dowd, Elizabeth Sitterly, Timothy J. Ashe, and Kathlein K. Krider, all of Cassiday, Schade & Gloor, of Chicago (D. Patterson Gloor, of counsel), for appellee.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, Brenda A. Farner, filed a three-count complaint in the circuit court of Cook County against defendant, Brunswick Corporation, seeking compensatory and punitive damages for injuries she suffered when she was struck by a propeller on a boat motor designed and manufactured by defendant. Pursuant to agreement of the parties, the circuit court transferred the cause to Kane County, and defendant filed a motion for summary judgment. Following the trial court's granting of summary judgment in favor of defendant, plaintiff filed this timely appeal pursuant to Supreme Court Rule 301 (134 Ill. 2d R. 301), and defendant cross-appealed.

The sole issue raised on appeal by plaintiff is whether the trial court erred in ruling that her products liability claim was preempted by the Federal Boat Safety Act of 1971 (Act) (46 U.S.C. §4301 *et seq.* (1988)). In its cross-appeal, defendant raises the issue of whether its product was not unreasonably dangerous as a matter of law, thereby entitling it to summary judgment on that separate basis.

Plaintiff's complaint alleged that on July 14, 1983, she was injured when she was struck by a boat powered with a Mercruiser 260 horsepower motor designed and manufactured by defendant. Count I of the complaint alleged that defendant's product was unreasonably dangerous and defective because it did not have a propeller blade guard and bladeless propulsion system. Count II alleged that defendant negligently designed, manufactured and marketed the product by failing to "develop and employ available propeller guarding and bladeless propulsion systems." Count III sought punitive damages based on defendant's wilful and wanton conduct in failing to equip the product with a propeller guard and a bladeless propulsion system. Defendants answered and raised several affirmative defenses, one of which was that a claim for punitive damages was preempted by the Act.

Defendant subsequently filed its motion for summary judgment arguing two bases for judgment in its favor. First, it maintained that the Act preempted any State regulation that would require a propeller guard and that a jury verdict finding liability would effectively create a regulation requiring propeller guards. Alternatively, defendant contended that it was entitled to summary judgment because the product was not unreasonably dangerous as a matter of law.

Plaintiff filed a response to defendant's motion for summary judgment wherein she initially argued that her claim was not preempted by the Act. Secondly, plaintiff asserted that the product was unreasonably dangerous as a matter of law. Finally, plaintiff posited that

there was a question of material fact as to the availability of alternative designs and as such the motion should be denied.

In this latter regard, plaintiff submitted the affidavits of Laurence E. Thibault, who holds a doctorate in mechanical engineering, and Arthur M. Reed, a Ph.D. in naval architecture and marine engineering. Dr. Thibault stated in his affidavit that a propeller guard could have been installed without any substantial effect on the performance of the boat and that such guard would have prevented plaintiff's injury. Dr. Reed, in his affidavit, stated that it was technologically feasible to incorporate a propeller guard into the design of the product without substantially impairing the use of the product.

The trial court granted defendant's motion for summary judgment, finding that the Act preempted "plaintiff's claims insofar as they [were] based on a failure to provide a propeller guard." The court further ruled that defendant was not entitled to summary judgment on the issue of whether the product was unreasonably dangerous. Plaintiff filed this timely appeal, and defendant cross-appealed from that part of the order denying its motion for summary judgment based on the unreasonable dangerousness of the product.

On appeal, plaintiff contends that the Act does not expressly preempt a State tort claim because: (1) the language "law" or "regulation" contained in section 4306 is not sufficiently specific to include liability damage claims; (2) section 4306 preempts only a State law or regulation that is not identical to regulations prescribed under the Act; (3) the savings clause provided in section 4311(g) of the Act reinforces the interpretation that Congress did not expressly preempt common-law damage claims; and (4) similar preemption and savings clauses in other Federal statutes have been construed as not preempting common-law damage claims.

Plaintiff further contends that the Act does not impliedly preempt a State tort claim premised on a manufacturer's failure to provide a propeller guard. In that regard, plaintiff maintains first that it is improper to consider the implied intent to preempt State tort claims in the face of an express statement of preemption that does not mention such claims. Second, plaintiff asserts the Act does not evidence an intent to occupy the entire field of boat safety to the exclusion of State participation. Third, plaintiff contends that uniformity of regulation is a goal of the Act only to the extent such uniformity promotes safety and is not an objective in and of itself. Fourth, plaintiff posits that a jury damage award in a common-law claim is not the equivalent of a law or regulation within the meaning of the Act.

Finally, plaintiff contends that there is no actual conflict between the Act and a common-law tort action based on the failure to provide a propeller guard.

Summary judgment is appropriate where the pleadings, depositions and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c); *American National Bank & Trust Co. v. National Advertising Co.* (1992), 149 Ill. 2d 14, 22.) Thus, where a suit may be determined according to a question of law, a trial court may properly dispose of the case on a summary judgment motion. (*Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 421.) Although summary judgment is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt, it is to be encouraged as an aid in the expeditious disposition of a lawsuit. *Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 271.

■■ While we have found no Illinois case directly addressing the preemption issue presented in this case, we are initially persuaded by the United States Supreme Court's recent discussion of the doctrine of Federal preemption in the context of a common-law claim against certain cigarette manufacturers. (See *Cipollone v. Liggett Group, Inc.* (1992), 505 U.S. ___, 120 L. Ed. 2d 407, 112 S. Ct. 2608.) As emphasized in *Cipollone*, pursuant to the supremacy clause of the Constitution, any State law that conflicts with Federal law is without effect. (*Cipollone*, 505 U.S. at ___, 120 L. Ed. 2d at 422, 112 S. Ct. at 2617.) Consideration of any issue arising under the supremacy clause begins with the assumption that the historic police powers of the State are not to be superseded by Federal law unless that is the clear and manifest purpose of Congress. (*Cipollone*, 505 U.S. at ___, 120 L. Ed. 2d at 422, 112 S. Ct. at 2617.) Thus, the ultimate question in any preemption analysis is to determine the intent of Congress. *Cipollone*, 505 U.S. at ___, 120 L. Ed. 2d at 422, 112 S. Ct. at 2617.

■ The intent of Congress may be expressly stated in a statute's language or implicitly contained in its structure and purpose. (*Cipollone*, 505 U.S. at ___, 120 L. Ed. 2d at 422-23, 112 S. Ct. at 2617.) In the absence of an express congressional command, State law is only preempted if that law actually conflicts with Federal law or if Federal law so thoroughly occupies a legislative field as to create a reasonable inference that Congress left no reason for the State to supplement it. (*Cipollone*, 505 U.S. at ___, 120 L. Ed. 2d at 423, 112 S. Ct. at 2617.) Furthermore, when Congress has included in legislation a provision explicitly addressing preemption, and that provision pro-

vides a reliable indication of congressional intent with respect to State authority, there is no need to infer congressional intent to preempt State law from the substantive provisions of the legislation. (*Cipollone*, 505 U.S. at ___, 120 L. Ed. 2d at 423, 112 S. Ct. at 2617.) Congress' enactment of a provision defining the preemptive reach of a statute implies that matters beyond that reach are not preempted. *Cipollone*, 505 U.S. at ___, 120 L. Ed. 2d at 423, 112 S. Ct. at 2618.

The Act contains two provisions relevant to this appeal. The first addresses Federal preemption and provides:

"Unless permitted by the Secretary under section 4305 of this title [46 U.S.C. §4305], a State or political subdivision of a State may not establish, continue in effect, or enforce a law or regulation establishing a recreational vessel or associated equipment performance or other safety standard or imposing a requirement for associated equipment (except insofar as the State or political subdivision may, in the absence of the Secretary's disapproval, regulate the carrying or use of marine safety articles to meet uniquely hazardous conditions or circumstances within the State) that is not identical to a regulation prescribed under section 4302 of this title [46 U.S.C. §4302]." (46 U.S.C. §4306 (1988).)

Section 4311(g), which the parties characterize as a "savings clause," provides:

"Compliance with this chapter [46 U.S.C. §4301 *et seq.*] or standards, regulations, or orders prescribed under this chapter [46 U.S.C. §4301 *et seq.*] does not relieve a person from liability at common law or under State law." 46 U.S.C. §4311(g) (1988).

Defendant cites two cases that have addressed the precise issue of whether the Act preempts a State common-law action against a manufacturer for failure to install a propeller guard. (See *Shields v. Outboard Marine Corp.* (M.D. Ga. 1991), 776 F. Supp. 1579; *Mowery v. Mercury Marine, Division of Brunswick Corp.* (N.D. Ohio 1991), 773 F. Supp. 1012.) Both of those cases held that the Act preempts a State tort action based on injuries resulting from a guardless propeller. In doing so, they both looked to section 4306 of the Act and concluded that Congress intended to prohibit the State from promulgating recreational boating equipment safety standards that are not identical to those contained in the Act. (*Shields*, 776 F. Supp. at 1581; *Mowery*, 773 F. Supp. at 1014.) As the *Mowery* court noted, the purpose of section 4306 is to standardize regulations applicable to the manufacture of boats by precluding States from adopting require-

ments that conflict with Federal standards. *Mowery*, 773 F. Supp. at 1014; see *Shields*, 776 F. Supp. at 1581.

■ Both the decisions in *Shields* and *Mowery* are premised, in part, upon the fact that the United States Coast Guard has been delegated the exclusive authority to establish safety regulations for recreational boats. (*Shields*, 776 F. Supp. at 1581; *Mowery*, 773 F. Supp. at 1015.) Pursuant to that authority, the Coast Guard decided that propeller guards should not be required on recreational watercraft. (*Shields*, 776 F. Supp. at 1581; *Mowery*, 773 F. Supp. at 1015.) The decision of the Coast Guard was a decision not to regulate and has the same legal consequence as if the Coast Guard had issued a safety standard declaring that the States are prohibited from adopting a regulation requiring propeller guards on recreational boats. (*Mowery*, 773 F. Supp. at 1016; see *Shields*, 776 F. Supp. at 1581.) The failure of Federal officials to exercise affirmatively their authority takes on the character of a ruling that no such regulation is appropriate or approved and a State is not permitted to enact such a regulation. *Shields*, 776 F. Supp. at 1581; *Mowery*, 773 F. Supp. at 1016.

Even if a State has not legislatively enacted a law or regulation requiring that recreational boats be equipped with propeller guards, a State jury award of damages based on a defendant's alleged failure to equip its product with such a guard would be tantamount to recognition of a State requirement that they be installed. (*Mowery*, 773 F. Supp. at 1016; see *Shields*, 776 F. Supp. at 1581.) State regulation can be as effectively exerted through an award of damages as through some form of preventive relief. (*Cipollone*, 505 U.S. at ____, 120 L. Ed. 2d at 426, 112 S. Ct. at 2620.) The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy. (*Cipollone*, 505 U.S. at ____, 120 L. Ed. 2d at 426, 112 S. Ct. at 2620.) Common-law tort actions are generally premised on the existence of a legal duty, and, as such, it is difficult to say they do not impose requirements or prohibitions. (*Cipollone*, 505 U.S. at ____, 120 L. Ed. 2d at 426, 112 S. Ct. at 2620.) Furthermore, "State law" includes common law as well as statutes and regulations. *Cipollone*, 505 U.S. at ____, 120 L. Ed. 2d at 426, 112 S. Ct. at 2620.

Section 4306 of the Act at issue here prohibits any State from establishing or enforcing a "law or regulation" establishing recreational vessel equipment safety standards. (See 46 U.S.C. §4306 (1988).) While we believe that a jury verdict finding defendant liable for failure to install a propeller guard would be tantamount to the imposition by the State of a regulation requiring defendant to do so, and thus at

odds with the Coast Guard's determination that no such guard is required, we also conclude that the use of the word "law" in section 4306 further evidences Congress' intent that no common-law tort action be maintained based on the lack of a propeller guard. As discussed above, State law clearly embraces the common law. We interpret this specific expression of congressional intent to preempt a common-law tort action as barring the action in this case.

■ We also reject plaintiff's contention that section 4311(g) preserves her cause of action. The purpose of this provision is to assure that in a product liability action mere compliance by a manufacturer with the standards promulgated under the Act will not be a *per se* defense to liability. (*Mowery*, 773 F. Supp. at 1017.) This provision has been interpreted as preventing a manufacturer from using compliance with the Act's safety standards as a defense against liability for defectively designed products that are actually installed. (*Mowery*, 773 F. Supp. at 1017, citing *Mulhern v. Outboard Marine Corp.* (1988), 146 Wis. 2d 604, 432 N.W.2d 130; *Rubin v. Brutus Corp.* (Fla. Dist. Ct. App. 1986), 487 So. 2d 360; see also *Wood v. General Motors Corp.* (1st Cir. 1988), 865 F.2d 395, 402 n.10 (court suggests National Traffic and Motor Vehicle Safety Act of 1966, which has similar savings clause, does not prohibit State tort action against manufacturer for defective design of installed airbag).) The savings clause (section 4311(g)) has not been applied to find a manufacturer liable for not installing a device it had a choice not to install. (*Mowery*, 773 F. Supp. at 1017.) On the other hand, the savings clause would preserve a plaintiff's claim based on a manufacturer's installation of a defective or unreasonably dangerous propeller guard. (*Mowery*, 773 F. Supp. at 1017 n.9.) In this case, however, section 4311(g) cannot permit plaintiff to assert her claim. Allowing the claim would be contrary to the nonrequirement of propeller guards and the Act's goal of uniform regulations. *Shields*, 776 F. Supp. at 1582.

■ Lastly, we consider plaintiff's reliance, in part, on *Mulhern v. Outboard Marine Corp.* (1988), 146 Wis. 2d 604, 432 N.W.2d 130, and *Rubin v. Brutus Corp.* (Fla. Dist. Ct. App. 1986), 487 So. 2d 360. In *Rubin*, the Florida Appellate Court held that the Act did not preempt a State tort claim based on injuries received when a seat installed by the manufacturer came loose and collapsed on impact. Likewise, in *Mulhern*, the Wisconsin Court of Appeals concluded that the Act did not preempt a State tort action premised upon a defective throttle mechanism installed by the defendant manufacturer.

We consider *Mulhern* and *Rubin* to be distinguishable from this case because the basis of the claim in each case was defectively de-

signed products which were actually installed. (See *Mowery*, 773 F.2d at 1017.) To the extent these two cases contain language arguably broad enough to suggest that the Act does not preempt the type of claim brought in this case, we decline to follow them. We offer no opinion as to whether the Act would preempt a State tort claim based on a manufacturer's installation of a defective or unreasonably dangerous propeller guard.

Because of our decision upholding the trial court's order granting summary judgment based on Federal preemption, we need not consider defendant's cross-appeal.

For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

Affirmed.

DUNN and BOWMAN, JJ., concur.