**Kathleen T. EDWARDS, et al., Plaintiffs,**

v.

**MURRAY CHRIS–CRAFT
SPORTBOATS, INC., et
al., Defendants.**

No. 92–953–CIV–T–21A.

United States District Court,
M.D. Florida,
Tampa Division.

March 9, 1994.

Nathaniel G.W. Pieper, Lau, Lane, Pieper & Asti, P.A., Tampa, FL, for Kathleen T. Edwards, Joann D. Sherouse.

Dennis Gus Diecidue, Dennis G. Diecidue, P.A., Tampa, FL, for Cindy Ann Sosa.

Thomas Eugene Fotopulos, Fotopulos, Spridgeon & Perez, P.A., Tampa, FL, for Murray Chris–Craft Sportboats, Inc.

Lori J. Caldwell, David B. Shelton, Sharon Kay Duncan, Rumberger, Kirk & Caldwell, P.A., Orlando, FL, for Viking Boat Co., Inc.

## ORDER

NIMMONS, District Judge.

Before the Court is the Motion of Defendant/Cross–Claimant Murray Chris–Craft Sportboats, Inc. for Summary Judgment on the Defense of Federal Preemption (Dkt. 82), and the Motion of Defendant Murray Chris–Craft Sportboats, Inc. for Summary Judgment on the Defense of Federal Preemption (Claims of Cindy Ann Sosa) (Dkt. 134).[1] Plaintiffs Kathleen T. Edwards, Joann D. Sherouse and Cindy Ann Sosa have filed memoranda of law (Dkts. 94, 140) in opposition to the relief requested in the above-referred Motions.[2]

On February 25, 1994, the Honorable L. Clure Morton entered an Order of the Court (Dkt. 163), which had the effect of granting the motions for summary judgment based upon the doctrine of federal preemption filed by Viking Boat Company, Inc. ("Viking"),[3] and dismissed Viking from the case. The Court did not, however, rule on the above-referred Motions filed by Murray.[4]

---

1. The two Motions filed by Murray Chris–Craft Sportboats, Inc. ("Murray") are directed to the individual claims of the three Plaintiffs. (The claims of the three Plaintiffs are virtually identical.) The first Motion is directed to the claims of Plaintiffs Kathleen T. Edwards and Joann D. Sherouse (Dkt. 82), and the second Motion relates to Cindy Ann Sosa's claims (Dkt. 134). The two Motions are alike in all other respects.

2. Plaintiff Sosa, in her response to Murray's Motion directed to her claims (Dkt. 140), simply adopted the response of Plaintiffs Edwards and Sherouse to Murray's Motion against them (Dkt. 94).

3. The memorandum opinion (Dkt. 162) accompanying Judge Morton's Order sets forth the Court's holding on Viking's motions for summary judgment on the preemption defense: "the Federal Boat Safety Act pre-empts any state action in connection with the regulation of pleasure boats in excess of 20 feet in length and the safety devices placed thereon."

4. The memorandum expressly states that "[t]he court declines ruling on whether the above holding on the doctrine of federal pre-emption disposes of the claims against Murray Chris–Craft Sportboats, Inc."

At the pretrial conference held on Wednesday, March 2, 1994, counsel for Plaintiffs conceded that there was no distinction between Viking and Murray relative to the preemption issue. Counsel for Plaintiffs also conceded that the only basis for its claims against the Defendants is Plaintiffs' contention that the boat involved in this action should have been designed and manufactured to incorporate positive flotation.

## BACKGROUND

Plaintiffs' Complaints contain negligence, breach of warranty and strict liability claims against Murray. They allege that Murray manufactured the boat in which Plaintiffs' husbands were fishing when they met their demise. The boat apparently began taking on water while they were fishing off the coast of Florida in the Gulf of Mexico, it sank, and Plaintiffs' husbands drowned. Plaintiffs contend that the if the boat had not been defectively designed and manufactured, it would not have sunk and the deaths would have been avoided.

Murray argues that the Federal Boat Safety Act of 1971 ("FBSA," or "Act"), 46 U.S.C. § 4301–4311, preempts Plaintiffs' state common law claims against it. Plaintiffs maintain that the FBSA and the regulations promulgated thereunder set only minimum safety standards, and that the remedies they seek were preserved by the FBSA's "savings clause," 46 U.S.C. § 4311(g).

## DISCUSSION

■ The ultimate test of federal preemption analysis is Congressional intent. *Cipollone v. Liggett Group, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). "Congress' intent may be 'explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" *Id.* (citation omitted). "[W]here a federal statute contains an express pre-emption clause, and that clause 'provides a "reliable indicium of congressional intent with respect to state authority,"'" a court should not consider implied theories of pre-emption." *Myrick v.*

*Freuhauf Corp.,* 13 F.3d 1516, 1521 (11th Cir.1994) (citations omitted).[5]

The FBSA contains a section that expressly addresses the issue of federal preemption, 46 U.S.C. § 4306. That section provides, in pertinent part:

[A] State or political subdivision of a State may not establish, continue in effect, or enforce a law or regulation establishing a recreational vessel or associated equipment performance or other safety standard or imposing a requirement for associated equipment ... that is not identical to a regulation prescribed under section 4302 of this title.

The Act also contains a "savings clause":

Compliance with this chapter or standards, regulations, or orders prescribed under this chapter does not relieve a person from liability at common law or under State law.

46 U.S.C. § 4311(g). The Court must construe these provisions. *See Myrick,* 13 F.3d at 1526, (both the pre-emption clause and the savings clause of the National Traffic and Motor Vehicle Safety Act "are preemption provisions in the material sense of the word, because both clauses explicitly deal with the subject of what is and what is not preempted").

■ The FBSA "gives the Coast Guard the exclusive responsibility for establishing safety regulations," *Elliott v. Brunswick Corp.,* 903 F.2d 1505, 1508 (11th Cir.1990), and provides that all state laws and regulations purporting to establish safety standards for recreational boats that are not identical to the federal regulations promulgated thereunder are invalid. 46 U.S.C. § 4306. The language of the preemption clause reaches more than just the positive enactments of statutes and regulations by state legislatures and regulatory bodies. An award of damages under state tort law has "long been held to be a form of state regulation subject to the supremacy clause." *Taylor v. General Motors Corp.,* 875 F.2d 816, 824 n. 16 (11th Cir.1989). Moreover, it is clear that state law includes common law as well as statutes

---

**5.** The 2–1 decision in *Myrick* has not become final, the Mandate not yet having issued as of the date of this Order.

and regulations. *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2620 (plurality opinion). The phrase "law or regulation" in the subject preemption provision clearly encompasses common law actions.[6] *See Cipollone,* —— U.S. ——, 112 S.Ct. at 2620 (plurality opinion) ("[J]ust last Term, the Court stated that the phrase 'all other law, including State and municipal law' 'does not admit of [a] distinction … between positive enactments and common-law rules of liability.'") (citations omitted). Therefore, the only state statutes, regulations, or common law actions permissible are those which establish, continue in effect, or enforce vessel safety standards identical to the federal regulations promulgated under the FBSA.

■ Furthermore, states must respect a federal decision not to regulate. A decision not to impose a particular requirement in an area within the regulatory authority of a federal agency may have as much preemptive effect as a decision to affirmatively impose a requirement. *See Shields v. Outboard Marine Corp.,* 776 F.Supp. 1579, 1581 (M.D.Ga. 1991) ("In this case, the Coast Guard declined to adopt regulations requiring the use of propeller guards. This implies a decision that this area is best left unregulated, which has as much preemptive effect as a decision to regulate."); *Mowery v. Mercury Marine, Div. of Brunswick Corp.,* 773 F.Supp. 1012, 1016 (N.D.Ohio 1991) (stating that a decision of the Coast Guard not to issue a regulation requiring propeller guards has the same legal consequence as issuing a regulation prohibiting the States from requiring them); *Farner v. Brunswick Corporation,* 239 Ill. App.3d 885, 180 Ill.Dec. 493, 497, 607 N.E.2d 562, 566 (1992) ("The decision of the Coast Guard was a decision not to regulate and has the same legal consequence as if the Coast Guard had issued a safety standard declaring that the States are prohibited from adopting a regulation requiring propeller guards on recreational boats."). When there is no federal requirement that manufacturers install a particular safety device, manufacturers are given the choice whether to install it. *Mowery,* 773 F.Supp. at 1016.

■ The issue of flotation requirements for recreational boats is addressed in the pertinent Coast Guard regulations. The regulations require that boats less than twenty feet in length be manufactured to pass specified flotation tests. 33 CFR 183.201–.235 (Subpart G—Flotation Requirements for Outboard Boats Rated for Engines of More Than 2 Horsepower). Although the Coast Guard is charged with establishing safety regulations for all recreational boats, and indeed many of the regulations promulgated pursuant to the Act are applicable to all recreational boats regardless of length,[7] the regulations only require that recreational boats under twenty feet in length meet the flotation tests. Consequently, manufacturers of recreational boats twenty feet or more in length have been given the choice whether to incorporate positive flotation. There is no question that the subject boat was over twenty feet in length and that the regulations promulgated do not apply the flotation specifications to boats of such length. Nevertheless, Plaintiffs contend that they should be allowed to assert their state common law actions against Murray based upon their assertions of defective design and manufacture because of the failure to incorporate positive flotation.

■ To allow a jury to award damages in this case under state common law for Murray's failure to incorporate positive flotation in the boat would be to establish, continue in effect, or enforce a law or regulation imposing a performance or other safety standard that is "not identical to a regulation prescribed under section 4302" of the FBSA. In

6. The *Taylor* court found that there was no express preemption of common law claims by the National Traffic and Motor Vehicle Safety Act ("NTMVSA") in part because there was no clear reference to state common law in the preemption section of that Act. Unlike here, the preemption provision involved in that case does not contain a reference to "*law* or regulation" (e.s.).

7. Subchapter S of the Coast Guard regulations, entitled "Boating Safety" is subdivided into Parts. Part 183 deals with "Boats and Associated Equipment." Approximately one-half of the Subparts of Part 183 are applicable, by their terms, only to boats less than twenty feet in length. The rest of the Subparts have no length limitation, and are presumably applicable to all recreational boats regardless of length.

the Court's view, the preemption section of the FBSA bars Plaintiffs' asserted common law actions.

■ The Court does not accept Plaintiffs' arguments that their causes of action are preserved by the savings clause found in § 4311(g). The purpose of the savings clause is to insure that compliance with the Act's safety standards will not be a complete defense to liability for a manufacturer in a product liability action. S.Rep. No. 92–248, 92d Cong., 1st Sess. (1971), *reprinted in* 1971 U.S.C.C.A.N. 1333, 1352. *See also Farner,* 180 Ill.Dec. at 498, 607 N.E.2d at 567; *Mowery,* 773 F.Supp. at 1017.

> Courts have interpreted this provision to prevent a manufacturer from using compliance with the minimum safety standards set forth in the Act as a defense against liability for defectively designed products that are *actually installed....* The savings clause has not been applied to find a manufacturer liable for not installing a device it had a choice not to install.

*Mowery,* 773 F.Supp. at 1017 (citing *Mulhern v. Outboard Marine Corp.,* 146 Wis.2d 604, 432 N.W.2d 130 (Ct.App.1988), and *Rubin v. Brutus Corp.,* 487 So.2d 360 (Fla. Dist.Ct.App.1986)); *see also Farner,* 180 Ill. Dec. at 498, 607 N.E.2d at 567 (citing and distinguishing *Mulhern* and *Rubin*). The savings clause, read together with the preemption clause, refers to those situations where manufacturers choose to install flotation beyond that which is required by the Act. For example, although Murray was not required to, and apparently did not, manufacture the subject boat to incorporate positive flotation, if it had, and the flotation design was defective, it would not be shielded from liability for such defect simply because it had complied with the federal regulations.[8] In summary, the Court finds that the savings clause does not preserve the causes of action asserted by the Plaintiffs in this case.

## CONCLUSION

The Court finds that Plaintiffs' common law causes of action against Murray are preempted by the Federal Boat Safety Act of 1971. Murray's above-referred Motions for Summary Judgment are due to be granted. Accordingly,

It is **ORDERED AND ADJUDGED** that the Motion of Defendant/Cross–Claimant Murray Chris–Craft Sportboats, Inc. for Summary Judgment on the Defense of Federal Preemption (Dkt. 82), and the Motion of Defendant Murray Chris–Craft Sportboats, Inc. for Summary Judgment on the Defense of Federal Preemption (Claims of Cindy Ann Sosa) (Dkt. 134) are **GRANTED.** The Clerk shall enter judgment for Murray Chris–Craft Sportboats, Inc. and against each of the Plaintiffs on the Plaintiffs' claims against Murray.

It is **FURTHER ORDERED** that, in view of the Court's February 25, 1994 Order (Dkt. 163) and accompanying memorandum (Dkt. 162), which granted Viking Boat Company, Inc.'s motions for summary judgment on the doctrine of federal preemption, the Clerk shall enter judgment for Viking and against each of the Plaintiffs on the Plaintiffs' claims against Viking.

**DONE AND ORDERED.**

---

8. The NTMVSA's savings clause, which is similar in many respects to the FBSA's savings clause, was examined by the Eleventh Circuit Court of Appeals in the *Taylor* case. 875 F.2d at 824, 825. The *Taylor* Court concluded that the NTMVSA's savings clause was in conflict with the preemption clause, but declined to resolve the conflict. *Id.,* 875 F.2d at 825. The Eleventh Circuit's opinion in the *Taylor* case continued on to the implied preemption analysis, and that Court found that congressional intent to preempt the claims at issue in that case may be inferred under the principles of implied preemption. Since, after *Myrick,* this Court may no longer resort to implied preemption analysis when there is an express preemption provision, any apparent conflict between the FBSA's preemption clause and savings clause must be reconciled. The Court finds that a harmonious reading of the two clauses requires the construction of the savings clause set forth above.