RICHARD BUSCH, as Adm'r of the Estate of Melissa Busch, Deceased, Plaintiff-Appellant, v. GRAPHIC COLOR CORPORATION *et al.*, Defendants-Appellees.

Second District   No. 2—94—0141

Opinion filed January 5, 1995.—Rehearing denied January 31, 1995.

Carl F. Schroeder, of Schroeder & Hruby, Ltd., of Wheaton, for appellant.

Louis A. Varchetto and Stephen A. Rehfeldt, both of Wylie, Mulherin, Rehfeldt & Varchetto, P.C., of Wheaton, for appellee Graphic Color Corporation.

Jane B. McCullough and Robert J. Rubin, both of Altheimer & Gray, of Chicago, for appellee Amrep, Inc.

PRESIDING JUSTICE McLAREN delivered the opinion of the court:

The plaintiff, Richard Busch, as administrator of the estate of his deceased wife, Melissa Busch, appeals the grant of summary judgment by the circuit court of Du Page County in favor of the defendants, Graphic Color Corporation and Amrep, Inc., based upon the court's determination that the plaintiff's State-law action for wrongful death was preempted by Federal law. We affirm.

Richard Busch owns R. Busch Drum, Inc., which buys, sells, and brokers recyclable industrial drums. Early in 1989, Graphic Color engaged Busch to clean some of its printing ink vats. Graphic Color provided Busch with 60 cans of Misty paint stripper and decal remover (Misty paint stripper), which is manufactured by defendant Amrep. Graphic Color also provided Busch with 12 vats to clean, each of which was about five feet high and five feet in diameter.

Graphic Color did not specifically warn Busch that Misty paint stripper, which contains methylene chloride, could be fatal if inhaled, but each can of the product contained printed warnings which track language required by the Federal Consumer Product Safety Commission (Safety Commission). See Safety Commission, Labeling of Certain Household Products Containing Methylene Chloride; Statement of Interpretation and Enforcement Policy (hereinafter 1987 Enforcement Policy), 52 Fed. Reg. 34,698—702 (1987).

Melissa Busch, although not an employee of R. Busch Drum, Inc., occasionally helped her husband with his business. On March 20,

1989, Richard Busch left his Cicero, Illinois, place of business to call on customers. When he returned he found Melissa unconscious next to one of the vats. She died, and the cause of death was determined to be methylene chloride intoxication.

On January 31, 1991, the plaintiff filed a complaint at law alleging wrongful death against the defendants based upon a claimed breach by the defendants of the duty to warn of the danger of methylene chloride. The plaintiff proffered an affidavit by Robert E. Davis, a chemist experienced in the properties of toxic chemicals, who expressed the opinion that the warning label contained on the Misty painter stripper cans was insufficient in that it does not specifically warn of the asphyxiation hazard of methylene chloride.

The defendants filed motions for summary judgment pursuant to section 2—1005 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1005 (West 1992)), alleging that the plaintiff's State-law action was preempted by the Federal Hazardous Substances Act (FHSA). (15 U.S.C. § 1261 *et seq.* (1988).) Following a hearing on January 3, 1994, the circuit court granted summary judgment for both defendants, finding preemption. The plaintiff filed a timely appeal.

On appeal, the plaintiff argues that the circuit court erred in finding preemption in that (1) the Safety Commission did not comply with Federal law in promulgating warning label requirements for products containing methylene chloride, and (2) the warning required for such products concerns a risk of injury which is different from that suffered by Melissa Busch.

■ We note initially that, because this matter comes to us via summary judgment, we have *de novo* review. (*Olympic Restaurant Corp. v. Bank of Wheaton* (1993), 251 Ill. App. 3d 594, 598.) A motion for summary judgment is properly granted only when " 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, quoting Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c) (now 735 ILCS 5/2—1005(c) (West 1992)).) Supreme Court Rule 191(a) provides that facts asserted in support of or opposition to a motion for summary judgment must be contained in affidavits and "shall be made on the personal knowledge of the affiants." (134 Ill. 2d R. 191(a).) Such affidavits must conform to the requirements of Supreme Court Rule 191. *Giampa v. Sunbeam Corp.* (1966), 68 Ill. App. 2d 425, 430.

We first consider the plaintiff's argument that the Safety Commission's labeling requirements for methylene chloride products are null and void because the Safety Commission did not comply

with the federally mandated procedures for establishing binding labeling requirements. Therefore, the plaintiff argues, the labeling requirements for methylene chloride do not in fact exist and can have no preemptive effect.

The defendants counter that the plaintiff waived this argument for appeal because he did not raise the issue below. The parties agree that, as a general principle of law, issues not raised in the trial court are waived for purposes of appeal. *Lannom v. Kosco* (1993), 247 Ill. App. 3d 629, 635-36.

■ Here, the record discloses that the only mention of the plaintiff's contention that the Safety Commission's labeling requirements for methylene chloride were void came in a brief colloquy during argument for summary judgment. Counsel for the plaintiff stated:

"What was issued in 1987 [1987 Enforcement Policy] was merely an intention of bringing enforcement actions.

They [Safety Commission] followed none of the rule-making procedures to get a valid rule under the Federal Hazardous Substance [*sic*] Act. They just said, 'If you don't do this, we're going to sue you. But if you beat us in court, you can win.'"

The plaintiff's counsel offered no affidavit in support of this contention, nor did he claim that he knew of his own knowledge or through some research that the Safety Commission in fact violated Federal rule-making procedures. Thus, the plaintiff did not satisfy the requirements of Supreme Court Rule 191. His comments were mere argument and did not raise a sufficient factual assertion to prevent the trial court from deciding the issue as a matter of law. The plaintiff has waived this issue for appeal.

The plaintiff cites *Toepper v. Brookwood Country Club Road Association* (1990), 204 Ill. App. 3d 479, as supporting his claim that he did not commit waiver. This case, however, is inapplicable here. In *Toepper*, we determined that the plaintiffs did not waive an argument for purposes of appeal when they first raised the issue during oral arguments on a motion for judgment on the pleadings. However, the plaintiffs in *Toepper* raised that same issue again during argument on a motion before the trial court to reconsider entry of judgment on the pleadings. Three years later, the plaintiffs incorporated that issue in their response to renewed motions for judgment on the pleadings. (*Toepper*, 204 Ill. App. 3d at 490.) Thus, the opponents in *Toepper*, and the trial court which considered the issue, clearly had ample opportunity to consider the merits of the argument.

Further, the issue in *Toepper* was raised in a motion for judgment on the pleadings pursuant to section 2—615(e) of the Code. (735 ILCS 5/2—615(e) (West 1992).) The present matter was determined pursu-

ant to a motion for summary judgment under section 2—1005. Supreme Court Rule 191, as we have noted, requires that factual assertions made pursuant to summary judgment motions under section 2—1005 be contained in affidavits based on personal knowledge. Supreme Court Rule 191 does not apply to section 2—615(e) motions for judgment on the pleadings.

Additionally, while we are bound to follow Federal case law which interprets Federal statutes (*Templeton v. Chicago & North Western Transportation Co.* (1991), 211 Ill. App. 3d 489, 495), the plaintiff has cited no Federal cases or other authority which passes on the validity of the Safety Commission's labeling requirements for methylene chloride. We note that the defendants' counsel countered the plaintiff's contentions during the summary judgment hearing. Defendants' counsel contended that the Safety Commission's rules were valid because they complied with a summary procedure permitted under Federal law. This argument was not supported by a Rule 191 affidavit nor by citation to case law. However, in the absence of a clear statement in any Federal statute or case law that this particular regulation is void, we will assume that a facially valid regulation is binding.

We next consider the plaintiff's contention that his State-law cause of action is not preempted because his wife died from an ailment not covered by the warning label required by the Safety Commission for methylene chloride products. We first note the general principles of Federal preemption.

■ The supremacy clause of the United States Constitution mandates that any State law which conflicts with Federal law is without effect. (*Farner v. Brunswick Corp.* (1992), 239 Ill. App. 3d 885, 889.) Our preemption analysis begins with the assumption that the historic police powers of the State are not to be superseded by Federal law unless that is "the clear and manifest purpose of Congress." (*Farner*, 239 Ill. App. 3d at 889.) Thus, the ultimate question in any preemption analysis is to determine the intent of Congress, which may be stated expressly in the statute's language or implied in the Federal law's structure and purpose. *Farner*, 239 Ill. App. 3d at 889.

■ Three circumstances give rise to preemption of State law by a Federal enactment. First, State law is preempted if the Federal statute at issue explicitly defines the extent of preemption intended. Second, Congress may demonstrate an intention to occupy a field of regulation with a scheme so comprehensive that there is no room for State supplementation. Third, State law is preempted to the extent that it actually conflicts with Federal law, thereby making compliance with both State and Federal regulations impossible. *Brennan v. Wisconsin Central Ltd.* (1992), 227 Ill. App. 3d 1070, 1075-76.

The question of whether and to what extent Federal law preempts State law recently was revisited by the United States Supreme Court in *Cipollone v. Liggett Group, Inc.* (1992), 505 U.S. 504, 120 L. Ed. 2d 407, 112 S. Ct. 2608. That case declared that a State-law claim for damages based on the failure to warn by cigarette manufacturers was preempted by Federal law to the extent that the claim relied on omissions or inclusions in advertisements or promotions. (*Cipollone*, 505 U.S. at 531, 120 L. Ed. 2d at 431-32, 112 S. Ct. at 2625.) Such warnings, the Court determined, were preempted by federally mandated health warnings printed on each package of cigarettes.

The preemption section of the FHSA which is relevant here provides:

"[I]f a hazardous substance or its packaging is subject to a cautionary labeling requirement under section 2(p) or 3(b) [subsec. (p) of this section or section 1262(b) of this title] designed to protect against a risk of illness or injury associated with the substance, no State or political subdivision of a State may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging and designed to protect against the *same risk or illness or injury* \*\*\*." (Emphasis added.) 15 U.S.C. § 1261 Note § 18(b)(1)(A) (1982).

It is uncontested that products containing methylene chloride are subject to the cautionary labeling required by the FHSA. Thus, the sole substantive issue presented here is whether the warning contained on the can of Misty paint stripper is aimed at "the same risk of illness or injury" as that suffered by Melissa Busch.

Each can of Misty paint stripper carried the following warning on the front label:

"WARNING
VAPOR HARMFUL, CONTENTS
UNDER PRESSURE KEEP OUT
OF REACH OF CHILDREN. Read
other precautions on back panel."

The back panel of each can contained the following statement:

"WARNING
Contains methylene chloride
which has been shown to cause
cancer in certain laboratory
animals. Risk to your health
depends on level and duration
of exposure."

The plaintiff contends that the Misty paint stripper label warns only of a risk of cancer, whereas Melissa Busch died of acute methyl-

ene chloride poisoning. The precise question we face here was answered by the Safety Commission in its report of final rules under the FHSA, published in the October 9, 1992, edition of the Federal Register:

> "*Comment.* An ancillary comment was made that the labeling requirements under the FHSA are too weak and vague to preempt state laws.
>
> *Response.* The requirements of the FHSA are not vague. \*\*\* [T]he labeling must communicate to the consumer an understanding of the potential hazard or hazards presented by the product in order to avoid being misbranded and subject to legal action. \*\*\*
>
> The cautionary labeling required under the FHSA must present a balanced perspective of the potential hazards of the product. Many products which may cause chronic health effects may also be acutely toxic and present physical hazards, such as flammability. *The suggested labeling for methylene chloride paint strippers had to take into consideration the product's acute inhalation toxicity in addition to the carcinogenicity hazard.* Therefore, the suggested front panel label statement is 'VAPOR HARMFUL' with the instruction 'Read Other Cautions and HEALTH HAZARD INFORMATION on back panel' and the back panel statement is 'Contains methylene chloride, which has been shown to cause cancer in certain laboratory animals.' For products where the only hazard is carcinogenicity and the evidence of increased risk of cancer to humans is clear, the labeling would be more straight forward." (Emphasis added.) 57 Fed. Reg. 46,664 (1992) (to be codified at 16 C.F.R. pt. 1500 (1994)).

■ Although we agree with the plaintiff that the warning label on the cans of Misty paint stripper focuses most specifically and directly on the cancer risk, there is no question that it tracks the language which the Safety Commission has determined to be an adequate warning for the exact danger experienced by Melissa Busch. As the Safety Commission's rules are, as we noted above, facially valid, they preempt State regulation in the area of warning labels for the danger of acute inhalation poisoning from methylene chloride. State regulation includes permitting the filing of tort actions which impact on the regulated area. (*Farner,* 239 Ill. App. 3d at 891.) Thus, we conclude that Federal law preempts the plaintiff's State-law cause of action.

We find unpersuasive the plaintiff's citation to a Federal case which found no preemption by the FHSA of a Connecticut law regulating toys designed for children between the ages of three and seven. *Toy Manufacturers of America, Inc. v. Blumenthal* (2d Cir. 1993), 986 F.2d 615.

In *Toy Manufacturers*, the Court of Appeals for the Second Circuit found that Congress specifically declined to enact legislation regulating toys for children in the age group governed by the Connecticut statute. The court noted that a subsection of the FHSA expressly states that the Federal regulation " 'does not apply to toys or other articles which are solely intended for use by children 3 years of age or older.' " (Emphasis omitted.) (*Toy Manufacturers*, 986 F.2d at 621, quoting 16 C.F.R. § 1501.2(c) (1992).) Connecticut passed the law at issue in *Toy Manufacturers* specifically to fill in that gap by regulating toys for children under the age of three.

Quoting the precise preemption section from the FHSA that is applicable here (*Toy Manufacturers*, 986 F.2d at 618, citing 15 U.S.C. § 1261 Note § 18(b)(1)(A) (1982)), the court determined that, because the FHSA and the Connecticut statute were clearly aimed at different age groups, the Connecticut law did not address the same risk of illness or injury as governed by the FHSA. (*Toy Manufacturers*, 986 F.2d at 623.) Further, the court found no implied preemption, reasoning that there was a "reliable indicium of congressional intent with respect to state authority." (Emphasis omitted.) (*Toy Manufacturers*, 986 F.2d at 624.) Here, the plain language of the Safety Commission's published rules and commentary clearly indicates preemption.

Although no Illinois cases have passed on the preemptive effect of the FHSA, we find support for our holding in an analogous case in which this court found preemption under similar circumstances. *Farner v. Brunswick Corp.* (1992), 239 Ill. App. 3d 885.

In *Farner*, we determined that a State-law products liability complaint against the manufacturer of a boat motor was preempted by the Federal Boat Safety Act of 1971 (Boat Act) (46 U.S.C. § 4301 *et seq.* (1988)). (*Farner*, 239 Ill. App. 3d at 892.) The plaintiff in *Farner* was injured when she was struck by a boat propeller which had no blade guard. We concluded that a preemption provision within the Boat Act precluded a State cause of action despite the existence within the Boat Act of a so-called "savings clause," which provided:

> "Compliance with this chapter [46 U.S.C. § 4301 *et seq.*] or standards, regulations, or orders prescribed under this chapter [46 U.S.C. § 4301 *et seq.*] does not relieve a person from liability at common law or under State law." *Farner*, 239 Ill. App. 3d at 890.

Nonetheless, we found preemption based on a section of the Boat Act which, in language similar to that in the present matter, prohibited a State from establishing or enforcing laws or regulations governing recreational vessel equipment safety standards. (*Farner*, 239 Ill. App. 3d at 891-92.) We believe that the preemption section of the FHSA similarly expresses a clear statement by Congress that States may not establish guidelines, nor by extension entertain tort

actions arising out of them, for labels which address the danger of acute inhalation poisoning from methylene chloride.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

GEIGER and BOWMAN, JJ., concur.