**Vicky LEWIS and Gary Lewis, individually as parents, as next friends and as administrator of the estate of Kathryn C. Lewis, Plaintiffs,**

**v.**

**BRUNSWICK CORP., Defendant.**

Civil Action No. CV 195–96.

United States District Court, S.D. Georgia, Augusta Division.

Jan. 22, 1996.

David E. Hudson, William James Keogh, III, Hull, Towill, Norman & Barrett, Augus-

ta, GA, R. Benjamin Hogan, III, Hogan, Smith & Alspaugh, Birmingham, AL, for plaintiffs.

Ronald L. Reid, James W. Hagan, Alston & Bird, Atlanta, GA, Thomas William Tucker, Dye, Tucker, Everitt, Wheale & Long, Augusta, GA, Daniel J. Connolly, Faegre & Benson, Minneapolis, MN, for defendant.

## ORDER

BOWEN, District Judge.

Before the Court is Defendant's Motion for Summary Judgment in the above-captioned case. Upon consideration of the parties' briefs and oral arguments before this Court on December 14, 1995, the Motion for Summary Judgment is GRANTED for the reasons stated below.

For purposes of this motion, the parties stipulate the following facts. On June 6, 1993, Plaintiffs' decedent fell or was thrown from a recreational boat. She died from injuries she sustained immediately after her fall when she was struck by the boat's propeller. The boat involved in the accident was equipped with an outboard motor and propeller manufactured or marketed by Defendant Brunswick Corp. ("Brunswick").

The decedent's parents filed this action against Brunswick, asserting common law claims premised on Brunswick's failure to equip the outboard motor with some form of propeller guard. Brunswick contends that these claims are preempted by the Federal Boat Safety Act of 1971 ("FBSA"), 46 U.S.C. § 4301 *et seq.*

Under the FBSA, the Secretary of Transportation may prescribe regulations which establish "minimum safety standards for recreational vessels and associated equipment ..." 46 U.S.C. § 4302. Rule-making authority under the FBSA has been delegated to the Commandant of the United States Coast Guard, acting through the Secretary of Transportation. The enabling legislation requires the Coast Guard to consult on such matters with the National Boating Safety Advisory Council. *Id.* § 4302(c)(4).

On May 11, 1988, the Coast Guard appointed a subcommittee of the Advisory Counsel

"to consider, review and assess available data concerning the nature and incidence of recreational boating accidents in which persons in the water are struck by propellers. Feasibility of some form of mechanical guard or other action to prevent such contact was to be examined." After extensive research and analysis, the subcommittee determined propeller guards would have only a negligible impact on boating safety, the guards could create new hazards of equal or greater consequence, and the guards were technologically infeasible. Its final suggestion was that the Coast Guard "should take no regulatory action to require propeller guards." These findings and conclusions were adopted unanimously by the Advisory Council.

In a letter of February 1990, Rear Admiral Robert T. Nelson adopted the Advisory Council's recommendation as the position of the Coast Guard, stating, "Available propeller guard accident data do not support imposition of a regulation requiring propeller guards on motorboats." Brunswick argues this decision not to require propeller guards preempts any state attempt to require the installation of propeller guards, including common law tort claims.

 Generally, any state law that conflicts with federal law is preempted and without effect under the Supremacy Clause of the Constitution. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Federal preemption analysis "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress." *Id.* at 516, 112 S.Ct. at 2617 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). Thus, the critical question in testing preemption is whether Congress intended that the relevant federal regulation or law supersede state law.

Section 4306 of the FBSA, which is relevant to identifying the FBSA's preemptive reach, provides the following:

[A] State or political subdivision of a State may not establish, continue in effect, or enforce a law or regulation establishing a

recreational vessel or associated equipment performance or other safety standard or imposing a requirement for associated equipment ... that is not identical to a regulation prescribed under section 4302 of this title.

 This section prohibits states from establishing or enforcing safety standards that are not identical to regulations prescribed under Section 4302 of the FBSA. Common law causes of action may constitute state regulation and "impose a requirement" on manufacturers to have propeller guards through an award of damages. *Cipollone,* 505 U.S. at 521, 112 S.Ct. at 2620 (citing *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 247, 79 S.Ct. 773, 781, 3 L.Ed.2d 775 (1959)). Common law damages actions are premised on the existence of a legal duty. *Id.* Thus, such actions necessarily impose "requirements" or "standards" subject to federal preemption. *Id.* at 521–22, 112 S.Ct. at 2620, *cited in CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993) (summarizing *Cipollone* as stating that when a federal statute bars additional requirements imposed under state law, the federal statute preempts common law claims); *Papas v. Upjohn Co.,* 985 F.2d 516 (11th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993). Also, the words "law" and "regulation" include common law tort claims. Accordingly, because the Coast Guard has expressly chosen not to require propeller guards as a minimum safety requirement, a damage award against Brunswick based on a common law tort claim would impose a regulation on it "not identical" to federal law.

Plaintiffs argue that there has been no clear "regulation" of propeller guards. However, the Coast Guard's position on the use of propeller guards is that there should be no regulation requiring propeller guards. The Coast Guard reached this decision only after extensive research, testing, and testimony. The final report of the Advisory Council indicates that the use of propeller guards is infeasible, ineffective as a safety measure, and indeed, imposes unique safety hazards. Thus, the decision that the area is best left

unregulated has as much preemptive effect as a determination to regulate. *Arkansas Elec. Co-op. Corp. v. Arkansas Pub. Serv. Comm'n,* 461 U.S. 375, 103 S.Ct. 1905, 76 L.Ed.2d 1 (1983).

I find that the Coast Guard's action in this matter is tantamount to a prohibition against states from adopting a regulation requiring propeller guards on recreational boats. Thus, a common law action premised on the failure to provide a propeller guard is a preempted state requirement under Section 4306 of the FBSA. This finding is supported in the following published cases: *Carstensen v. Brunswick Corp.,* 49 F.3d 430 (8th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 182, 133 L.Ed.2d 120 (1995); *Davis v. Brunswick Corp.,* 854 F.Supp. 1574 (N.D.Ga.1993); *Shield v. Bayliner Marine Corp.,* 822 F.Supp. 81 (D.Conn.1993); *Shields v. Outboard Marine Corp.,* 776 F.Supp. 1579 (M.D.Ga.1991); *Mowery v. Mercury Marine, Div. of Brunswick Corp.,* 773 F.Supp. 1012 (N.D.Ohio 1991); *Ryan v. Brunswick Corp.,* 209 Mich.App. 519, 531 N.W.2d 793 (Ct.App. 1995); *Farner v. Brunswick Corp.,* 239 Ill. App.3d 885, 180 Ill.Dec. 493, 607 N.E.2d 562 (1992), *appeal denied,* 151 Ill.2d 563, 186 Ill.Dec. 380, 616 N.E.2d 333 (1993).

 Even if the Coast Guard sufficiently demonstrated an intent to allow manufacturers to build boat motors without propeller guards, Plaintiffs contend that the FBSA's savings clause preserves common law tort actions regardless of the action taken by the Coast Guard. Section 4311(g) provides: "Compliance with this chapter or standards, regulations, or orders prescribed under this chapter does not relieve a person from liability at common law or under State law."

Plaintiffs argue this savings clause expresses Congress' clear intention to preserve common law tort claims under the Act, especially because Section 4306 does not expressly provide for the preemption of common law claims. Plaintiffs concede that had the savings clause not been in the FBSA, the Court would be free to include common law claims

in the terms "law" and "regulation" in the preemption clause. However, because the savings clause was included, they argue those terms are stripped of the inclusion of common law claims. Plaintiffs cite the Eleventh Circuit decision in *Myrick v. Freuhauf Corp.* in support of this position. 13 F.3d 1516 (11th Cir.1994), *aff'd sub. nom., Freightliner Corp. v. Myrick,* —— U.S. ——, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995). However, the preemptive clause in the Motor Vehicle Safety Act at issue in *Myrick* was much narrower. It only preempted state safety "standards," not "laws, regulations, and requirements." Thus, *Myrick* is distinguishable.

Other courts have reconciled the savings clause with the preemption clause, finding that the savings clause preserved claims of liability for defectively designed products that are *actually installed. Shield,* 822 F.Supp. 81; *Mowery,* 773 F.Supp. 1012. Thus, if Brunswick chose to surpass the minimum requirements of the Coast Guard and install propeller guards, the savings clause would preserve common law tort claims based upon any defective design thereof.

For the reasons stated above, I find Plaintiffs' claims in this action are preempted under Section 4306 of the FBSA. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED.** The clerk is instructed to **CLOSE** this case and **ENTER FINAL JUDGMENT** in favor of Defendant, taxing costs against Plaintiffs.

**ORDER ENTERED.**