THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 24, 2021

## WINDIE L. PERRY v. STATE OF TENNESSEE

### Appeal from the Circuit Court for Montgomery County
No. 41100485    Jill Bartee Ayers, Judge

_____

### No. M2019-02074-CCA-R3-PC
_____

The Petitioner, Windie L. Perry, appeals from the Montgomery County Circuit Court's denial of her petition for post-conviction relief from her convictions for two counts of especially aggravated kidnapping, two counts of aggravated child abuse, one count of facilitation of rape of a child, two counts of false imprisonment, and six counts of reckless endangerment and her effective twenty-year sentence. On appeal the Petitioner contends that the post-conviction court erred by denying relief on her ineffective assistance of counsel claims. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Gordon W. Rahn (on appeal) and Tia Marie Bailiff (at post-conviction hearing), Clarksville, Tennessee, for the appellant, Windie L. Perry.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; Arthur F. Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Petitioner's convictions relate to the abuse of two of her adopted children, G.P. and V.P.[1] The grand jury returned a forty-seven-count indictment charging the Petitioner, along with her husband and adult daughter, with multiple offenses related to each victim, and at the trial, forty-five counts were submitted for the jury's consideration. In connection

---

[1] It is the policy of this court to refer to minors and victims of abuse by their initials.

with G.P., the Petitioner was convicted of facilitation of rape of a child, two counts of false imprisonment, especially aggravated kidnapping, aggravated child abuse, three counts of reckless endangerment, and aggravated assault. In connection with V.P., the Petitioner was convicted of especially aggravated kidnapping, aggravated child abuse, and three counts of reckless endangerment.[2] This court affirmed all of the Petitioner's convictions, except the conviction for aggravated assault against G.P, which was reversed based upon an error in the jury instructions.[3] *See State v. Windie L. Perry*, No. M2014-00029-CCA-R3-CD, 2015 WL 3540554, at *1-2 (Tenn. Crim. App. June 5, 2015), *perm app. denied* (Tenn. Oct. 15, 2015).

The trial evidence established that the Petitioner and codefendant Elizabeth A. Perry physically abused the victims for a period of years, which caused scars and permanent injuries despite reconstructive and orthopedic surgeries. The abuse was discovered when the screaming and crying victims ran to a nearby neighbor, who called 9-1-1 to report the situation. The victims were malnourished, wore dirty clothes, and displayed poor hygiene. Medical personnel who treated the victims observed that V.P. had puncture marks between the fingers and burns on the head, wrists, arms, and ears. V.P. likewise had bruises on the face, neck, knees, abdomen, buttocks, and ankles. Her left hand was deformed to the extent that she could only move two fingers. V.P. had suffered a significant fracture of the thumb, which expert proof showed could not have been self-inflicted and which was the result of significant force pulling the thumb backward. Later, V.P. underwent two surgeries to repair the damage to the hand, but she had permanent impairment. V.P.'s other injuries to her hands were consistent with jumper cables being applied to her hands and with being hit on the knuckles repeatedly. The injuries were at various stages of healing.

G.P.'s injuries were, likewise, extensive. She was malnourished, had swollen lips that were consistent with having jumper cables clamped to the mouth, and had abrasions and bruises on the head at various stages of healing. G.P. had bruises on the wrists, arms, abdomen, buttocks, knees, and ankles. The bruise on the buttocks was the result of repeated trauma. G.P. had pinpoint wounds on the thigh consistent with having been inflicted by a staple gun and had injuries inside the mouth consistent with having been slapped repeatedly on the face. G.P.'s frenulum was severed, which was described as a "hallmark sign of abuse" and which was consistent with pliers pulling on the tissue.

---

[2] The record reflects that the jury acquitted the Petitioner's husband of all criminal wrongdoing but found the Petitioner's daughter, Elizabeth A. Perry, guilty of facilitation of rape of a child, false imprisonment, two counts of facilitation of especially aggravated kidnapping, and three counts of reckless endangerment.

[3] The record reflects that on remand, the charge was dismissed on December 22, 2015.

The victims and three of their siblings who lived inside the home and were likewise adopted by the Petitioner testified about the abuse. The victims were treated differently than the other children and were responsible for cleaning the home. The victims were punished for not cleaning fast enough and for wetting the bed. Their punishments included beating with a rubber hose, a baseball bat, a metal pole, a spatula, a belt, a rolling pin, and a hammer. The hammer was used to strike their fingers, toes, knees, and elbows. Forensic evidence showed the presence of V.P.'s DNA profile on a rolling pin found inside the home. Likewise, jumper cables were applied to their fingers, toes, lips, and breasts, and clothes pins were applied to their eye lids, ears, fingers, toes, legs, breasts, and vaginas. Forensic evidence showed the presence of the victims' DNA profiles on the jumper cables found inside the home. The victims were locked in dog kennels, deprived of food, and restrained to cots with ropes, chains, and duct tape. On two occasions, the Petitioner inserted a broomstick in G.P.'s vagina because she urinated on herself. *Id*. at *1-15.

On March 16, 2016, the Petitioner filed a pro se petition for post-conviction relief. Post-conviction counsel filed an amended petition, and an evidentiary hearing was held on October 1, 2019. Although the pro se petition raised multiple allegations for relief, the post-conviction hearing evidence was limited to whether trial counsel provided ineffective assistance by failing to object to the trial court's providing a "checklist" of the charges to the jury before the presentation of the evidence and by failing to object to the State's treating the victims as hostile witnesses. Additionally, the Petitioner alleges that post-conviction counsel provided ineffective assistance by failing to present evidence and witnesses at the evidentiary hearing regarding all of the allegations contained in the pro se petition.

Trial counsel testified that he had practiced criminal defense for twenty-two years. He said that before opening statements at the Petitioner's trial, the trial court provided the jury with a document that "reflected the language of the indictment." Counsel said that the language from each indictment count was "copied and pasted" into the document. Counsel said that he had never seen a court provide a jury with a similar document. He agreed the indictment contained factual allegations. After reviewing the trial transcript, counsel agreed the trial judge acknowledged that providing the jurors with the document was not its customary practice.

Trial counsel testified that he had never tried a case involving forty-five counts and that it never occurred to him a basis existed to object to the document provided to the jurors. He said that the prosecutor read the indictment to the jury before the proof and that counsel feared the jury would "blanketly convict" the Petitioner on all counts if the jury did not have "some kind of method of discerning between all of the proof in the two-week plus trial." Counsel said that, in his opinion, the document did not prejudice the defense and that as a result, he did not object to the court's document.

Trial counsel testified after reviewing the trial transcript that a bench conference was held during V.P.'s testimony. Counsel agreed that the prosecutors requested the trial court's permission to treat V.P. as a hostile witness because the prosecutors believed V.P. lied during direct examination. Counsel stated that he did not object, that the defense had presented evidence of the victims' inconsistent statements during the trial, and that the prosecutors became frustrated with the victims, which led to the prosecutors requesting the trial court's permission to ask the victims leading questions. Counsel said that "trial strategy-wise," the trial was going well and that he did not object to the prosecutor's request. Counsel believed it was obvious to the jury that the State was "having problems" with the victims.

Trial counsel testified that he and counsel for the codefendants objected frequently to the prosecutor's leading questions. Counsel recalled that initially the trial court overruled the objections but that, as the testimony progressed, the court "continually" sustained the objections. Counsel recalled that he objected to leading questions about whether V.P. had clothespins placed on her body between her neck and waist and that the court sustained the objection. Counsel likewise recalled that the court sustained an objection related to whether dog chains were used to restrain the victims to beds.

On cross-examination, trial counsel testified that he presented multiple character witnesses in defense of the Petitioner. Counsel recalled that the Petitioner "would not testify." Counsel agreed that the trial court granted his motion for a judgment of acquittal for seven counts and that the jury acquitted the Petitioner of nineteen counts. Counsel believed the defense was successful based upon the facts of the case. Counsel said that the defense had an "uphill battle" based upon the recording of the 9-1-1 call and the medical evidence of the victims' injuries. Counsel said that the 9-1-1 recording reflected the Petitioner's confrontation with the neighbor who placed the call and a highly emotional situation between the women before the police arrived. Counsel said that he looked at the jurors as they listened to the recording.

Trial counsel testified that his case file contained a copy of the document provided to the jurors before the trial began. A copy of the document was received as an exhibit and reflects verbatim language of the forty-five indictment counts. The defendants' names were in bold font, and each count identified the specific victim. Counsel agreed that generally, trial judges advised potential jurors of the nature of a case and the individual charges.

Trial counsel testified that Tennessee Rule of Evidence 607 permitted the prosecutor's asking the victims leading questions and that the jurors knew the victims were being "somewhat impeached" by the prosecutor. Counsel recalled that the "children" who testified presented well to the jury and that the children became emotional. Counsel recalled that V.P. became too emotional to testify and that the court excused the jury to

allow her time to regain her composure. Counsel said that he did not want to offend the jurors during the testimony of the children.

On redirect examination, trial counsel testified that he would be surprised if the transcript did not reflect the reading of the indictment, although he did not have any specific recollection of it. He said that although he had never heard a trial court tell a jury the details of the factual allegations contained in the indictment, the indictment is "laid before the jury" every time before a trial begins. Counsel said the jury always knew the allegations before the presentation of the evidence.

The post-conviction court entered a written order denying relief. The court reviewed the trial transcript regarding the document prepared by the trial judge and disseminated to the jurors. After the review, the court determined that although the Petitioner called the document a "checklist," the document was a verbatim recitation of the charges in each indictment count. The court found that Tennessee Criminal Procedure Rule 24(1)(C) "instructs" a trial court to briefly outline the nature of the case and that the document at issue was merely an outline of the nature of the case meant to assist the juror's understanding of the charges in the forty-seven count indictment. The court found that the trial judge instructed the jurors that the document was akin to an indictment and that the document was not evidence, had no probative value, and was intended to assist the jurors to "keep up with the proceedings." The post-conviction court found that the trial judge made clear that the document did not contain facts and determined that the document was not presented to the jury as factual evidence. As a result, the court determined that trial counsel did not provide deficient performance by failing to object to the document. The court found that the Petitioner failed to establish that the jury was rendered partial by the use of the document and that, as a result, the Petitioner failed to establish any prejudice to her defense.

The post-conviction court determined that the Petitioner was not denied her right to confront her accusers when the trial court permitted the prosecution to treat some of its witnesses as hostile. The post-conviction court likewise determined that trial counsel did not provide deficient performance by failing to object to the prosecutor's asking leading questions. The court found that Tennessee Evidence Rule 607 permitted the State to attack the credibility of its witnesses and that Rule 611 gave the trial court the discretion to allow the State to ask leading questions of its witnesses. The post-conviction court credited counsel's testimony that as a matter of trial strategy, counsel thought the testimony had shown that the witnesses had made inconsistent statements relative to the allegations before and during the trial. The court found that the witnesses' continued inconsistent statements benefited the defense strategy of highlighting the changing stories of the witnesses. The court found that counsel believed it was obvious to the jury that the State was impeaching its own witnesses.

The post-conviction court likewise reviewed the pro se petition for post-conviction relief. The court determined that the claims not addressed at the evidentiary hearing were without merit because the Petitioner had failed to establish her claims by clear and convincing evidence. This appeal followed.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2018). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2018). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*,

466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

**A.      Checklist**

The Petitioner argues that the post-conviction court erred by denying relief because counsel provided ineffective assistance by failing to object to a checklist prepared by the trial court and provided to the jury before the trial evidence was presented.

The record reflects that during the trial court's preliminary instructions, the court provided the jurors with a document, which was a verbatim recitation of each of the forty-five indictment counts. Relative to the document, the trial court instructed the jurors as follows:

> So – with that I am going to hand out to you a document that is intended to be a – sort of help you keep up with the nature of the charges that have been lodged.
>
> This is not normal practice because we normally don't have as many counts in a case, but you are not expected to memorize forty-five counts and know who has been charged in this count and who hasn't been charged. That sort of thing -- so I have prepared a document that recites the language of the allegation made as to which defendant, as to which count. I want to caution you, this is taken from the indictment and you know, we have already discussed the indictment. The indictment is merely a charging instrument. It sets out in words and phrases, the nature of the charges that have been lodged against each defendant. The indictment is not evidence. It doesn't prove anything. It has no probative value in terms of evidence, but it will be helpful to you in the sense that you can know which count applies to which defendant and what the nature of the charge is; do you understand what I'm saying? This is no -- has no evidence value at all, it is merely intended to help you sort of keep up with the proceedings. So, would you hand that out please to the members of the jury, and if you will put that in your clipboard and there should be one for each member of the jury.

Afterward, opening statements began. Although the trial transcript does not reflect that the indictment was read to the jury, the document provided to the jury was a verbatim recitation of each indictment count, including the named defendant and victim. This case included forty-five counts, involved two victims and three defendants, and based on trial counsel's testimony, the trial spanned more than two weeks. Although the trial court acknowledged providing such a document was not the customary practice, the court explained to the jurors that the document was not evidence, had no probative value, and

-7-

was merely meant to assist the jurors to the extent it allowed them to understand which indictment count applied to which defendant and the nature of each allegation. Jurors are presumed to follow a trial court's instructions. *See Henley v. State*, 960 S.W.2d 572, 581 (Tenn. 1997).

The trial court had an obligation, in relevant part, to instruct the jury before the proof regarding the "general nature of the case and the elementary legal principles that will govern the proceeding." Tenn. R. Crim. P. 30(d)(1). The purpose of providing the jurors with this information is to "better enable jurors to understand the evidence and apply the proof to the applicable law" in order for the jurors to "be able to put the proof in the context of the legal rules involved in the dispute." *Id*., Advisory Comm'n Cmts. Furthermore, the record reflects that the trial court prohibited the State from referencing any indictment count during the presentation of the evidence and required the State to "link" the testimony with the indictment counts during its closing argument.

The Petitioner alleges that Tennessee Criminal Procedure Rule 30(c) prohibited the trial court from providing a written document reflecting the language of the indictment before the jury retired for deliberations. However, Rule 30(c) does not reflect any such explicit prohibition, and the Petitioner has not cited any legal authority interpreting Rule 30 to prohibit the document in this case. Rule 30(c) addresses a trial court's final jury instructions provided after the conclusion of the proof, which are required to be reduced to writing and taken to the jury room during deliberations. In any event, although reading the indictment to a jury before the presentation of the proof is an acceptable form, the language of an indictment "at best is a mere accusation to inform the jury of the charges against the defendant" and "[i]t raises no presumption of guilt." *State v. Bane*, 853 S.W.2d 843, 484 (Tenn. 1993).

Likewise, trial counsel testified that after he learned of the document, he did not object because he feared the jury would "blanketly convict" the Petitioner on all counts if the jurors did not have a "method of discerning" the evidence during the lengthy trial. As a result, counsel determined that the document benefited the Petitioner and the defense, and the record reflects that the jury acquitted the Petitioner of nineteen counts and could not reach a verdict for one count. The post-conviction court determined that counsel made a tactical decision not to object to the document. *See Adkins*, 911 S.W.2d at 347; *see Pylant*, 263 S.W.3d at 874. The record supports the post-conviction court's determinations that trial counsel did not provide deficient performance in this regard and that the Petitioner failed to establish prejudice. The Petitioner is not entitled to relief on this basis.

## B.     The State's Witnesses

The Petitioner alleges that trial counsel failed to object to the State's asking the victims leading questions during direct examination because it allowed the State to present evidence that otherwise would not have been presented.

At a bench conference during V.P.'s testimony, the prosecutors expressed concern with V.P.'s testimony that the Petitioner had penetrated V.P.'s vagina digitally, rather than with an object.  The indictment did not allege digital penetration, and the State had alleged the Petitioner had penetrated V.P.'s vagina with a mop or broom.  The trial court told the prosecutor that she could impeach any witness if she had a good-faith basis and asked if she had a good faith-basis.  *See* Tenn. R. Evid. 607 ("The credibility of a witness may be attacked by any party, including the party calling the witness."); Tenn. R. Evid. 611(c)(2) (mode and order of interrogation in connection with hostile witnesses).  The prosecutor stated she had a good-faith basis based upon the forensic interview.  The court stated that if the prosecutor could not impeach V.P. successfully, the court would stop the questioning.  Trial counsel did not object.  However, the record reflects that counsel and codefendant Elizabeth Perry's trial counsel objected to multiple leading questions.

Although the Petitioner alleges that the State requested permission and was permitted to ask G.P. leading questions in an effort to impeach G.P., the record reflects that during direct examination, the trial court requested a bench conference, at which time the court instructed the prosecutor to stop asking G.P. leading questions.  The prosecutor responded that she was attempting to prevent G.P. from rambling and that she would ask more open-ended questions.  Trial counsel stated that he was "very concerned," although he had objected throughout G.P.'s testimony.  As a result, the record does not reflect that the State sought to impeach G.P. by asking leading questions.  We note that the Petitioner only cites to the trial transcript in connection with V.P.'s testimony and does not cite to the transcript in connection with G.P.  *See* T.R.A.P. 27(a)(7)(A) (requiring that an appellant's argument contain "citations to the authorities and appropriate references to the record . . . relied on"); Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived[.]").  We decline to speculate as to the Petitioner's complaints relative to G.P.

Trial counsel's credited testimony reflects that he did not object to the leading questions because the defense theory was that the victims had provided multiple inconsistent statements before the trial and that the continued inconsistent statements during the trial benefited the defense.  Counsel stated that the prosecutors became frustrated with the victims during the trial and that it would have been obvious to the jury that the State was impeaching the victims.  Counsel objected multiple times during V.P.'s direct examination, and the trial court sustained some of those objections.  Furthermore, counsel said that the children who testified presented well to the jury and that the children became

emotional at times, which is supported by the trial court record. The trial transcript reflects that V.P. became emotional during her trial testimony. The trial court interjected during direct examination because the court could not understand V.P. The court told V.P. to compose herself, and direct examination continued. V.P. became emotional again, and the trial recessed for fifteen minutes. After the jury was out of the courtroom, the court told V.P. that she was going to have to regain her composure because the questioning would be lengthy. Counsel did not want to offend the jury during the testimony of the victims and made a strategic decision not to object to the leading questions. The record supports the post-conviction court's determinations that trial counsel did not provide deficient performance in this regard and that the Petitioner failed to establish prejudice. The Petitioner is not entitled to relief on this basis.

## C.    Post-Conviction Counsel

The Petitioner alleges that post-conviction counsel provided ineffective assistance by failing to present witnesses, including her personal physician, the private investigator hired by the defense, and multiple character witnesses, in connection with allegations raised in the pro se petition. She asserts that post-conviction counsel only presented evidence of the allegations raised in the amended petition for relief, which denied her a full and meaningful hearing on the issues raised in the pro se petition.

Although a post-conviction petitioner enjoys a statutory right to counsel, a petitioner does not have a constitutional right to the effective assistance of counsel as outlined by *Strickland v. Washington*. *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *Frazier v. State*, 303 S.W.3d 674, 680 (Tenn. 2010); *see also* T.C.A. § 40-30-17(b)(1) (2012) (right to counsel). A post-conviction petitioner is afforded, via due process, "the opportunity to be heard at a meaningful time and in a meaningful manner." *House v. State*, 911 S.W.2d 705, 711 (Tenn. 1995). In order to have a full and fair hearing, the petitioner is merely entitled to an "opportunity to present proof and argument on the petition for post-conviction relief." *Id.* at 714.

The record reflects that the Petitioner was afforded an evidentiary hearing. The post-conviction court considered the issues and denied relief in a written order that addressed all of the Petitioner's allegations. Although the evidence presented at the hearing was limited to two allegations of ineffective assistance of trial counsel, the pro se petition raised issues for which evidence was not presented.

The record reflects that the Petitioner was afforded the opportunity to be heard at a meaningful hearing and that post-conviction counsel adequately investigated the Petitioner's case. After post-conviction counsel filed the amended petition for relief, she filed a motion to declare this case complex and extended. The motion noted that extended travel to meet with the Petitioner was required and that this case involved the longest trial

in Montgomery County history. Counsel stated that she had been required to collect evidence because none of the Petitioner's previous attorneys possessed the discovery materials. Counsel stated that she had to review the trial and sentencing hearing transcripts, along with records from the Department of Children's Services and from the parental termination proceedings that followed the trial. The trial court record was voluminous. As a result, the Petitioner is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

 

_____
ROBERT H. MONTGOMERY, JR., JUDGE